IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| OUR CHILDREN'S EARTH FOUNDATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL MARINE FISHERIES SERVICE, et al.,<br><br>Defendants. | Case No. 14-1130 SC<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT |

## I.   **INTRODUCTION**

Now before the Court are cross-motions for partial summary judgment seeking to resolve Freedom of Information Act ("FOIA") claims in this environmental and administrative law case.  ECF Nos. 34 ("Mot."), 39 ("Opp'n & Cross-Mot.").  Plaintiffs are two groups of environmental advocates seeking summary judgment on their claims that Defendants,[1] the National Marine Fisheries Service (the

---

[1] The operative complaint, ECF No. 20 ("Compl.") names several other defendants including Penny Pritzker, Secretary of Commerce, Rodney McInnis, Regional Administrator of the Fisheries Service, and Sally Jewell, Secretary of the Interior.  Nevertheless, because this motion solely concerns FOIA claims against the Fisheries Service and the Fish and Wildlife Service, these defendants' actions are not at issue in the motion.  As a result, the Court will treat this order as though there were only two defendants, the Fisheries Service and the Fish and Wildlife Service.

United States District Court<br>For the Northern District of California

"Fisheries Service") and the Fish and Wildlife Service ("FWS"), failed to comply with the FOIA in responding to Plaintiffs' requests for documents.  Additionally, Plaintiffs allege that the Fisheries Service has a pattern and practice of such failures. Defendants disagree and have moved for summary judgment in their own right, arguing they have complied with the law.

The motions are fully briefed, ECF Nos. 47 ("Pls.' Opp'n & Reply"), 49 ("Gov't Reply"), and appropriate for resolution without oral argument under Civil Local Rule 7-1(b).  For the reasons set forth below the motions are GRANTED IN PART and DENIED IN PART.

**II.   BACKGROUND**

Plaintiffs have two intertwined concerns in this case: the fate of a fish protected by the Endangered Species Act, the Central California Coast Steelhead, and the activities of Stanford University, which they believe are adversely impacting Steelhead population and habitat.

The Steelhead is a species of trout with a habitat stretching along the California coast from Sonoma County to Santa Cruz County. See NOAA Fisheries, West Coast Region, Central California Coast Steelhead, http://www.westcoast.fisheries.noaa.gov/ protected_species/salmon_steelhead/salmon_and_steelhead_listings/ steelhead/central_california_coast/Central%20California%20Coast%20S teelhead.html (last accessed March 27, 2015).  Steelheads spend most of their adult life in the ocean, but they spawn and raise young in freshwater rivers or streams like the San Francisquito Creek, which flows from the Santa Cruz Mountains above Menlo Park, California into the San Francisco Bay.  San Francisquito Creek and

United States District Court
For the Northern District of California

1  its watershed are outlined in purple in this map:



Wikipedia, San Francisquito Creek, http://en.wikipedia.org/wiki/
San_Francisquito_Creek (last accessed March 27, 2015).

       Circled in orange in the left-center of the above map is
Searsville Lake, a man-made reservoir formed by the Searsville Dam.
Stanford owns the dam, which was built in 1892, as well as the lake
and other related water diversions and infrastructure, which it
refers to collectively as the "Lake Water System."  Stanford uses
the Lake Water System to provide non-potable water for its campus.
Plaintiffs believe the Lake Water System adversely affects the
Steelhead by reducing water flows in San Francisquito Creek and its

**United States District Court**
For the Northern District of California

1    tributaries and cutting the Steelhead off from access to upstream

2    spawning habitat.

3         In a case pending before Magistrate Judge Laporte, Plaintiffs

4    seek to enjoin Stanford's activities.  See Our Children's Earth

5    Foundation v. Stanford Univ., No. 13-cv-00402-EDL (N.D. Cal.).  In

6    this action, Plaintiffs take a different tack, challenging the

7    Fisheries Service's issuance of a biological opinion to the U.S.

8    Army Corps of Engineers assessing the impact of Stanford's planned

9    upgrades to two water diversion facilities dubbed (inaptly in

10   Plaintiffs' view) the "Steelhead Habitat Enhancement Project."

11   Specifically, Plaintiffs believe the Fisheries Service failed to

12   assess all the appropriate effects of the Project in issuing its

13   report.  See 50 C.F.R. § 402.02.  Additionally, Plaintiffs argue

14   that the biological opinion's authorization of the "take" (a term

15   of art in the Endangered Species Act) of the Steelhead in the

16   course of the project was also improper.  See 16 U.S.C. § 1538

17   (defining "take" within the meaning of the Endangered Species Act).

18   Plaintiffs challenge both actions under Section 706(2)(a) of the

19   Administrative Procedure Act, which prohibits arbitrary and

20   capricious agency actions.  See 5 U.S.C. § 706(2)(a).

21        While this allegedly arbitrary and capricious biological

22   opinion forms the gravamen of Plaintiffs' complaint, these motions

23   involve only two related FOIA issues.  The first concerns the

24   Fisheries Service and the FWS' allegedly tardy and incomplete

25   response to four FOIA requests Plaintiffs made regarding four

26   topics: (1) the Steelhead and two other endangered species with

27   habitat in the San Francisquito Creek watershed, (2) the Fisheries

28   Service's biological opinion, (3) Stanford's Steelhead Habitat

**United States District Court**
For the Northern District of California

1   Enhancement Project, and (4) the rest of the Lake Water System.

2   The second dispute concerns whether the Fisheries Service has a

3   pattern and practice of such tardy and incomplete responses and, if

4   so, whether the Service should be enjoined from continuing that

5   practice.  The parties have both moved for summary judgment.

6

7   **III.  LEGAL STANDARD**

8       Entry of summary judgment is proper "if the movant shows that

9   there is no genuine dispute as to any material fact and the movant

10  is entitled to judgment as a matter of law."  Fed. R. Civ. P.

11  56(a).  Summary judgment should be granted if the evidence would

12  require a directed verdict for the moving party.  Anderson v.

13  Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).  "A moving party

14  without the ultimate burden of persuasion at trial—usually, but not

15  always, a defendant—has both the initial burden of production and

16  the ultimate burden of persuasion on a motion for summary

17  judgment."  Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.,

18  Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).

19      "In order to carry its burden of production, the moving party

20  must either produce evidence negating an essential element of the

21  nonmoving party's claim or defense or show that the nonmoving party

22  does not have enough evidence of an essential element to carry its

23  ultimate burden of persuasion at trial."  Id.  "In order to carry

24  its ultimate burden of persuasion on the motion, the moving party

25  must persuade the court that there is no genuine issue of material

26  fact."  Id.  "The evidence of the nonmovant is to be believed, and

27  all justifiable inferences are to be drawn in his favor."  Anderson,

28  477 U.S. at 255.

**United States District Court**
For the Northern District of California

FOIA cases are typically decided on motions for summary judgment. <u>Yonemoto v. Dept. of Veterans Affairs</u>, 686 F.3d 681, 688 (9th Cir. 2011) <u>as amended</u> (Jan. 18, 2012). "To carry their summary judgment burden, agencies are typically required to submit an index and 'detailed public affidavits' that, together, 'identify the documents withheld, the FOIA exemptions claimed, and a particularized explanation of why each document falls within the claimed exemption.'" <u>Id.</u> (quoting <u>Lion Raisins v. Dep't of Agric.</u>, 354 F.3d 1072, 1082 (9th Cir. 2004) (alterations in original). These submissions are typically referred to as a <u>Vaughn</u> index, after <u>Vaughn v. Rosen</u>, 484 F.2d 820, 823-25 (D.C. Cir. 1973), and they must be "from 'affiants who are knowledgeable about the information sought' and 'detailed enough to allow court[s] to make an independent assessment of the government's claim of exemption." <u>Yonemoto</u>, 686 F.3d at 688 (internal alterations omitted) (quoting <u>Lion Raisins</u>, 354 F.3d at 1079).

**IV.   DISCUSSION**

The parties' motions concern four FOIA requests. Plaintiffs' first request sought, among other things, documents related to impacts on the Steelhead and two other species in the San Francisquito Creek watershed stemming from Stanford's Lake Water System. Second, Plaintiffs sought documents related to Stanford's efforts to mitigate the impact of the Searsville Dam on the Steelhead pending the Fisheries Service's final action on Endangered Species Act authorization for Stanford's activities. In their third request, Plaintiffs requested documents responsive to their first request coming into the Fisheries Service's possession

**United States District Court**
For the Northern District of California

after the date of that request as well as some additional
documents.  Finally, Plaintiffs' fourth request targeted documents
relating to the search cutoff dates for Plaintiffs' first two
requests and documents pertaining to the Fisheries Service's
general policy toward search cutoff dates for FOIA searches.

Now the parties have moved for summary judgment to resolve
claims stemming from these requests and the Fisheries Service's and
FWS' response to them.  Plaintiffs make three basic arguments.
First, Plaintiffs contend the Fisheries Service either failed to
adequately describe its searches or conducted an inadequate search
and withheld documents without sufficient justification.  Second,
Plaintiffs argue they are entitled to declaratory judgment that the
Fisheries Service violated FOIA's deadlines in responding to these
four requests and in three related internal appeals, and FWS
violated FOIA's deadlines in responding to a referral of documents
from the Fisheries Service.  Third, Plaintiffs argue these alleged
violations of the FOIA are a part of the Fisheries Service's
pattern and practice of non-compliance with the FOIA's mandates,
and ask the Court to issue an injunction ordering the Fisheries
Service to comply with the FOIA in the future.  The Government
disagrees with these allegations, and urges the Court to decline to
enter declaratory or injunctive relief and instead enter summary
judgment in its favor.

The Court will address the adequacy of the search and improper
withholding arguments first, before turning to Plaintiffs' requests
for declaratory or injunctive relief.

///

///

**United States District Court**
For the Northern District of California

### A.   **Adequacy of the Search**

First, Plaintiffs challenge the adequacy of the Fisheries Service's search for records responsive to their first and third FOIA requests.

To comply with the FOIA, an agency must conduct a "'search reasonably calculated to uncover all relevant documents.'" Zemansky v. EPA, 767 F.2d 569, 571 (9th Cir. 1985) (quoting Weisberg v. U.S. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). In so doing, "the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but whether the search for those documents was adequate." Id. (quotation omitted) (emphasis in original).

To prevail on a motion for summary judgment, the agency must demonstrate "'beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents.'" S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv., No. CIV. S-06-2845 LKK/JFM, 2008 WL 2523819, at *11 (E.D. Cal. June 20, 2008) (quoting Zemansky, 767 F.2d at 571). In so doing, the agency may rely on "reasonably detailed, non-conclusory affidavits and declarations submitted in good faith," id., describing "what records were searched, by whom, and through what process." Lawyers' Comm. for Civil Rights v. U.S. Dep't of the Treasury, 534 F. Supp. 2d 1126, 1131 (N.D. Cal. 2008) (citing Steinberg v. U.S. Dep't of Justice, 23 F.3d 548, 552 (D.C. Cir. 1994)). The purpose of this requirement is "to afford a FOIA requester an opportunity to challenge the adequacy of the search and to allow the district court to determine if the search was adequate in order to grant

summary judgment." <u>Oglesby v. U.S. Dep't of Army</u>, 920 F.2d 57, 68 (D.C. Cir. 1990).

To comply with this requirement, the Fisheries Service submitted a declaration from Gary Stern, the Branch Chief of the Fisheries Service's San Francisco Bay Branch detailing its searches in response to Plaintiffs' first and third FOIA requests.  ECF No. 41 ("Stern Decl.").  After reviewing Plaintiffs' first request, Stern "tasked all [Fisheries Service] staff within the San Francisco Bay Branch and administrative support staff within the [North-Central Coast Office] with searching for responsive documents, because the San Francisco Bay Branch of the [North-Central Coast Office] were [sic] the only [Fisheries Service] branch and office in the West Coast Region that would be in possession of any records sought by Plaintiffs . . . ."  <u>Id.</u> at ¶ 5; <u>see also</u> <u>id.</u> at ¶ 9 (making similar conclusions and giving similar instructions regarding Plaintiffs' third FOIA request).  The searches were limited to these offices because the Fisheries Service's work with Stanford, the Searsville Dam, and the San Francisquito Creek all fell within the San Francisco Bay Branch's geographic area of responsibility.  Stern Decl. at ¶¶ 5, 9.

In response to Plaintiffs' first FOIA request, the Fisheries Service staff and North-Central Coast Office administrative support staff searched hard copy and electronic files including emails, office files, and "relevant project folders" for responsive records.  <u>Id.</u> at ¶ 6.  In describing these files, Stern provides parenthetical examples, pointing, for example, to the project file for the Fisheries Service's Endangered Species Act consultations with the Army Corps of Engineers for Stanford's Steelhead Habitat

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

Enhancement Project.  <u>Id.</u>  Relevant project files were identified
using a database, and then, having retrieved the corresponding
paper records, reviewed by Stern and other Fisheries Service
biologists.  <u>Id.</u> at ¶ 8.  Fisheries Service staff took six weeks
(averaging 15 hours per week) to conduct the search and compile the
relevant records.  <u>Id.</u> at ¶ 7.  Records scanning and index
preparation took approximately five weeks (averaging 20 hours per
week).  <u>Id.</u>  Finally, Stern and his team reviewed the records over
the course of approximately one week, reviewing for an average of
two hours per day.  <u>Id.</u>  Once completed, the review yielded 1,051
documents (36,009 pages).  <u>Id.</u>

The details of the Fisheries Service's search for Plaintiffs'
third FOIA request are scarcer.  Stern describes the search in
similar terms, again stating the staff searched hard copy and
electronic files including emails, office files, and "relevant
project folders," and providing parenthetical examples.  <u>Id.</u> at ¶
10.  However, unlike his description of the search in response to
Plaintiffs' first request, Stern provides no detail on how
potentially relevant documents were reviewed, by whom they were
reviewed, and how "relevant project files" were identified.
Puzzlingly, unlike his description of the first search, Stern does
aver that "[t]he staff at the [North-Central Coast Office] searched
in all areas of its office where responsive documents could
reasonably be expected to be found."  <u>Id.</u> at ¶ 10.  In any event,
the search identified just one responsive document that had not
already been produced. <u>Id.</u> at ¶ 13.

Even if Stern's declaration were sufficiently detailed, the
Fisheries Service has not carried its burden of showing "beyond a

United States District Court
For the Northern District of California

material doubt, and viewing the facts in the light most favorable
to the requester, that it 'has conducted a search reasonably
calculated to uncover all relevant documents.'"  See Lawyers'
Comm., 534 F. Supp. 2d at 1131 (quoting Steinberg v. U.S. Dep't of
Justice, 23 F.3d 548, 551 (D.C. Cir. 1994)).  As Plaintiffs point
out, an email chain (involving Stern), report, and other documents
produced in Plaintiffs' parallel litigation against Stanford
demonstrate that the Fisheries Service's Office of Law Enforcement
in Monterey, California had an open investigation between at least
2009 and 2013 into the Endangered Species Act "take" of the
Steelhead by the Searsville Dam.  See Costa Reply Decl. Exs. 3, 33.
Documents from that investigation clearly fall within the scope of
Plaintiffs' first and third FOIA requests, which sought, among
other things, any documents in the Fisheries Service's possession
related to the impact of the Searsville Dam on the Steelhead.  ECF
No. 43 ("Malabanan Decl.") at ¶ 12.  Yet it is undisputed that
Plaintiffs' requests were not forwarded to the Office of Law
Enforcement and no searches took place there.  See id. at ¶ 13.

     Neither Stern, the FOIA coordinator for the Fisheries
Service's West Coast Region, Ana Liza Malabanan, nor the Fisheries
Service discusses this issue, even though Plaintiffs pressed it in
their opening brief.  See Mot. at 18-19.  Ignoring this issue is
particularly puzzling given that Stern personally exchanged emails
regarding the investigation and suggested a telephone conference to
discuss it.  See Costa Reply Decl. Ex. 33.  As a result, Stern and
the Fisheries service "had reason to know that [the Office of Law
Enforcement] . . . contain[ed] responsive documents," and was thus
"obligated under FOIA to search barring an undue burden."

**United States District Court**
For the Northern District of California

1   _Valencia-Lucena v. U.S. Coast Guard_, 180 F.3d 321, 327 (D.C. Cir.

2   1999).  This renders the Fisheries Service's searches in response

3   to Plaintiffs' first and third requests inadequate.  Accordingly,

4   the Fisheries Service's motion is DENIED as to the adequacy of the

5   searches for the first and third requests and Plaintiffs' motion is

6   GRANTED as to the same.  Because Plaintiffs do not challenge the

7   adequacy of Defendants' second and fourth searches, both of which

8   are supported by affidavits establishing the reasonability of the

9   searches conducted, summary judgment is GRANTED in favor of the

10  defendants on those searches.

11      **B.    FOIA Exemptions**

12      The FOIA's goal is to "ensure an informed citizenry, vital to

13  the functioning of a democratic society, needed to check against

14  corruption and to hold the governors accountable to the governed."

15  _NLRB v. Robbins Tire & Rubber Co._, 437 U.S. 214, 242 (1978).  While

16  this goal reflects a general philosophy of full agency disclosure,

17  _John Doe Agency v. John Doe Corp._, 493 U.S. 146, 152 (1989), FOIA

18  incorporates nine exemptions, which reflect the need to balance the

19  public's interest full disclosure against the sometimes legitimate

20  need for the Government to maintain secrecy.  _See_ 5 U.S.C. §

21  552(b)(1)-(9).  Because, "[t]hese limited exceptions do not obscure

22  the basic policy that disclosure, not secrecy, is the dominant

23  objective of the Act," _Dep't of Interior v. Klamath Water Users_

24  _Protective Ass'n_, 532 U.S. 1, 7-8 (2001) (citation omitted),

25  exemptions are to be narrowly construed, and "information not

26  falling within any of the exemptions has to be disclosed . . . ."

27  _Yonemoto_, 686 F.3d at 688.

28

**United States District Court**
For the Northern District of California

1    The Court finds the record insufficient to decide whether the

2    Fisheries Service's withholdings are appropriate under Exemptions

3    b(6) or b(5).  As a result, the Court orders further submissions

4    from the agency and will hold the motions for summary judgment as

5    to the agency's withholdings in abeyance until the record is

6    supplemented.

7              **1.   Exemption (b)(6)**

8         First, Plaintiffs challenge the redaction of the names of two

9    Fisheries Service investigators from an email chain under FOIA

10   Exemption (b)(6), which exempts from disclosure "personnel and

11   medical files and similar files the disclosure of which would

12   constitute a clearly unwarranted invasion of personal

13   privacy . . . ."  5 U.S.C. § 552(b)(6).  The email chain at issue,

14   Exhibit 3 to the Costa Reply Declaration, is the same email

15   discussed above between Gary Stern and individuals at the Fisheries

16   Service's Office of Law Enforcement regarding the Office's pending

17   investigation of Endangered Species Act "takes" of the Steelhead at

18   the Searsville Dam.  While Stern's name and several others appear

19   unredacted in the email chain, the Fisheries Service redacted the

20   names and contact information for two individuals in its Office of

21   Law Enforcement, stating in its Vaughn Index that the "withheld

22   information consists of the names and contact information of NOAA

23   law enforcement officers.  The withheld information constitutes

24   personal information that would constitute an unwarranted invasion

25   of personal privacy in which no public interest has been

26   identified."  Malabanan Decl. Ex. 1 ("Vaughn Index") at Record No.

27   164.

28

**United States District Court**
For the Northern District of California

Under Exemption (b)(6), the Court must first determine whether the email chain qualifies as a "similar file[]" within the meaning of the exemption.  Forest Serv. Emp. for Envt'l Ethics v. U.S. Forest Serv., 524 F.3d 1021, 1024 (9th Cir. 2008).  The phrase "similar files" is to be construed broadly, and Congress intended it to cover "detailed Government records on an individual which can be identified as applying to that individual." U.S. Dep't of State v. Wash. Post Co., 456 U.S. 595, 602 (1982).  If the emails qualify as "similar files," then two steps remain.  First, the Court must determine if "disclosure implicates a personal privacy interest that is 'nontrivial . . . .'" Yonemoto, 686 F.3d at 693 (quoting Forest Serv., 524 F.3d at 1026).  If the agency fails to establish that disclosure "would lead to the invasion of a non-trivial personal privacy interest protected by Exemption 6, the FOIA demands disclosure, without regard to any showing of public interest." Id. at 694 (collecting cases).  If, on the other hand, the agency meets its burden, the Court then engages in a balancing approach, asking whether the privacy interests the agency identified outweigh the public's interest in the disclosure of information that "'would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to.'" Id.  Nevertheless, if the agency's Vaughn index fails to provide "a particularized explanation of why each document falls within the claimed exemption," the court cannot usually make a categorical judgment of the privacy interests at issue.  Id.

Here the agency has failed to provide a particularized explanation of what non-trivial privacy interest would be

**United States District Court**
For the Northern District of California

implicated if these individuals' names and contact information are disclosed.  True, as the Fisheries Service points out (in its brief, not its declarations or <u>Vaughn</u> index), Plaintiffs have stated they will publicize the information they receive.  <u>See</u> Gov't Reply at 8 (citing Costa Decl. Ex. 1, at 7-8).  However, unlike other cases in which courts have found privacy interests in individuals' names or contact information, there is no reason aside from speculation for concluding these individuals will be subjected to "harassment," "embarrassment," "stigma," or other negative consequences if their associations with this email are publicly revealed.  <u>See</u> <u>Forest Serv.</u>, 524 F.3d at 1026; <u>see also</u> <u>U.S. Dep't of State v. Ray</u>, 502 U.S. 164, 176 (1991) (concluding that releasing the identities of individuals cooperating with a State Department investigation "could subject them or their families to embarrassment in their social and community relationships"); <u>Prudential Locations LLC v. U.S. Dep't of Hous. & Urban Dev.</u>, 739 F.3d 424, 432 (9th Cir. 2013) (finding individuals who reported violations of the Real Estate Settlement Procedures Act could reasonably expect their names would remain anonymous based on HUD's confidentiality policy); <u>Lahr v. Nat'l Transp. Safety Bd.</u>, 569 F.3d 964, 975 (9th Cir. 2009) ("Releasing unredacted documents would reveal publicly these eyewitnesses' involvement in a controversial criminal investigation.").  On the contrary, the investigation of the Steelhead takes at the Searsville Dam is not hotly controversial and is unlikely to subject any of the individuals involved to harassment or embarrassment.  Instead, the only obvious consequence of disclosure is that Plaintiffs and interested members of the public will be able "'shed light on an agency's performance

of its statutory duties' or otherwise let citizens know 'what their government is up to.'"  Dep't of Def., 510 U.S. at 497 (quoting U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press, 489 U.S. 749, 773 (1989)).

To be sure, there may well be some non-trivial privacy interest implicated here.  However the Court cannot conclude these documents are categorically protected merely because they contain names and contact information.  See Yonemoto, 686 F.3d at 695-96 ("Disclosure of most of these records may indeed constitute a nontrivial invasion of personal privacy, but the [Fisheries Service] has yet to articulate why.").  Yet that is the only basis aside from speculation that the Fisheries Service has furnished. As a result the Court ORDERS the Fisheries Service to supplement the factual record within 30 days of the signature date of this Order to enable the Court to more fully assess what, if any, privacy interests are at stake.  See id. at 696.  The Court HOLDS IN ABEYANCE the motion to summary judgment as to this document until the record is supplemented and the Court determines if additional filings or in camera review is necessary.

### 2.   Exemption (b)(5)

Second, Plaintiffs argue that the Fisheries Service has failed to adequately justify some of its withholdings under FOIA Exemption (b)(5), which protects materials produced as part of the agency's deliberative process or protected by attorney-client privilege. Id. at (b)(5).  The Fisheries Service has invoked this exception in withholding 15 documents in part and another five documents in their entirety.

**United States District Court**
For the Northern District of California

Exemption (b)(5) applies to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(6). As a result, the rule protects from disclosure "those documents normally privileged in the civil discovery context." NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975). There are two such privileges at issue here: attorney-client privilege and the executive "deliberative process" privilege.

"(1) When legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived." U.S. v. Martin, 278 F.3d 988, 999 (9th Cir. 2002). The privilege extends to agencies as well to the extent the agency is consulting its attorney "'as would any private party seeking advice to protect personal interest.'" Ctr. for Bio. Diversity v. Office of Mgmt. & Budget, 625 F. Supp. 2d 885, 892 (N.D. Cal. 2009) (quoting Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 863 (D.C. Cir. 1980)). To support claims of attorney-client privilege, the agency must, in its Vaughn index, "show that these documents involved the provision of specifically legal advice or that they were intended to be confidential and were kept confidential." Nat'l Resource Def. Council v. U.S. Dep't of Def., 388 F. Supp. 2d 1086, 1104 (C.D. Cal. 2005) (emphasis in original) (quotation omitted). The agency fails to meet its burden if it uses to boilerplate language and makes "no effort . . . to tailor the explanation to the specific

United States District Court
For the Northern District of California

1  document withheld . . . ." Wiener v. FBI, 943 F.2d 972, 978-79

2  (9th Cir. 1991).

3       Deliberative process privilege seeks "'to prevent injury to

4  the quality of agency decisions' by ensuring that the 'frank

5  discussion of legal or policy matters,' in writing, within the

6  agency, is not inhibited by public disclosure." Maricopa Audubon

7  Soc. v. U.S. Forest Serv., 108 F.3d 1089, 1092 (9th Cir. 1997)

8  (quoting Sears, 421 U.S. at 150-51).  To fall within the

9  deliberative process privilege, the material withheld or redacted

10 must be "'predecisional' in nature and must also form part of the

11 agency's 'deliberative process.'"  Id. at 1093 (quoting Sears, 421

12 U.S. at 151-52) (emphasis in original).  Predecisional documents

13 are those "prepared in order to assist an agency decisionmaker in

14 arriving at his decision, and may include recommendations, draft

15 documents, proposals, suggestions, and other subjective documents

16 which reflect the personal opinions of the writer rather than the

17 policy of the agency." Assembly of State of Cal. v. U.S. Dep't of

18 Commerce, 968 F.2d 916, 920 (9th Cir. 1992) (quoting Formaldehyde

19 Inst. v. Dep't of Health & Human Servs., 889 F.2d 1118, 1122 (D.C.

20 Cir. 1989)) (internal citations and quotation marks omitted).

21 Documents falling within that definition are part of the agency's

22 "deliberative process" if disclosing those documents "would expose

23 an agency's decisionmaking process in such a way as to discourage

24 candid discussion within the agency and thereby undermine the

25 agency's ability to perform its functions." Id. (quoting

26 Formaldehyde, 889 F.2d at 1122).

27      Plaintiffs challenge the Fisheries Service's declarations and

28 Vaughn index, arguing that the Fisheries Service failed to comply

with its duty to provide Plaintiffs with "[a]ny reasonably segregable portion of a record . . . after deletion of the portions which are exempt" from disclosure under the FOIA.  5 U.S.C. § 552(b).  Under this standard, "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions."  Mead Data Ctr., Inc. v. U.S. Dep't of the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977).  The burden is on the agency to establish that segregable portions of documents have been disclosed, Pacific Fisheries, Inc. v. United States, 539 F.3d 1143, 1148 (9th Cir. 2008), and to meet this burden, the agency must provide "'a detailed justification and not just conclusory statements.'"  ACLU of N. Cal. v. FBI, No. 12-cv-03728-SI, 2015 WL 678231, at *3 (N.D. Cal. Feb. 17, 2015) (quoting Charles v. Office of the Armed Forces Med. Examiner, 979 F. Supp. 2d 35, 42 (D.D.C. 2013)).  In so doing, "a blanket declaration that all facts are so intertwined [as] to prevent disclosure under the FOIA does not constitute a sufficient explanation of non-segregability."  Wilderness Soc'y v. U.S. Dep't of the Interior, 344 F. Supp. 2d 1, 19 (D.D.C. 2004).

    The Fisheries Service has fallen well short of its burden as to segregability.  At issue are the four records, Record Nos. 595, 681, 682, and 684, which the Fisheries Service withheld in full pursuant to the deliberative process privilege.  The Fisheries Service's declaration merely contains a blanket statement that "[t]o the best of [FOIA Coordinator Ana Liza Malabanan's] knowledge, to the extent . . . there is factual material . . . in the withheld portions of the . . . documents listed in the Vaughn Index, that information is not segregable from the withheld

19

**United States District Court**
For the Northern District of California

1    portions."  Malabanan Decl. ¶ 78.  This is clearly insufficient.

2    See ACLU of N. Cal. v. FBI, No. 12-cv-03728-SI, 2014 WL 4629110, at

3    *9 (N.D. Cal. Sept. 16, 2014) (concluding a similarly conclusory

4    declaration was insufficient to carry the agency's burden on

5    segregability).

6         For similar reasons, the Fisheries Service's justification for

7    redactions and withholdings on attorney-client privilege grounds

8    are also insufficient.  As in the segregability context, the agency

9    bears the burden of showing that the exemption applies, including

10   showing that "it supplied information to its lawyers with the

11   expectation of secrecy and the information was not known by or

12   disclosed to any third party."  Elec. Frontier Found. v. CIA, No. C

13   09-3351 SBA, 2013 WL 5443048, at *16 (N.D. Cal. Sept. 30, 2013).

14   Also as in the segregability context, the Fisheries Service has

15   failed to comply with this rule, simply providing a blanket

16   conclusion that "to the best of" Ms. Malabanan's knowledge the

17   documents in the Vaughn index "have not been disclosed outside the

18   U.S. Government."  Malabanan Decl. ¶ 79.  Because the Fisheries

19   Service has made "no effort . . . to tailor the explanation to the

20   specific document withheld," it has not met its burden.  See Elec.

21   Frontier, 2013 WL 5443048, at *16 (quoting Wiener, 943 F.2d at 978-

22   79).

23        Finally, Plaintiffs argue that the Fisheries Service

24   improperly withheld an attachment to an email chain between Gary

25   Stern and counsel for the National Oceanic and Atmospheric

26   Administration.  See Malabanan Decl. ¶ 74.  The attachment is "a

27   record of a telephone conversation between Gary Stern . . . and

28   Matt Stoecker ([from the organization] Beyond Searsville Dam),

United States District Court
For the Northern District of California

1   being forwarded for legal advice . . . ."  Id.  Plaintiffs rightly

2   object to this conclusion, because "[a]ttachments which do not, by

3   their content, fall within the realm of the [attorney-client]

4   privilege cannot become privileged by merely attaching them to a

5   communication with the attorney."  Pacamor Bearings, Inc. v.

6   Minebea Co., Ltd., 918 F. Supp. 491, 511 (D.N.H. 1996); see also

7   Hanson v. Wells Fargo Home Mortg., Inc., No. C13-0939JLR, 2013 WL

8   5674997, at *4 (W.D. Wash. Oct. 17, 2013) ("Documents attached to

9   or included in an attorney-client communication are not

10  automatically privileged, and the party asserting privilege must

11  prove that each attachment is protected by privilege.") (citing

12  O'Connor v. Boeing N. Am., Inc., 185 F.R.D. 272, 280 (C.D. Cal.

13  1999)).  As it stands now, the Fisheries Service has not shown by

14  its description of the record that this attachment is likely to be

15  protected by the attorney-client privilege.

16      In light of these issues with the Fisheries Service's

17  submissions, the Court ORDERS the Fisheries Service to supplement

18  the record within 30 days of the signature date of this Order to

19  provide sufficient explanations for the non-segregability of the

20  records withheld in full under Exemption (b)(5) (with the exception

21  of those also withheld in full on the grounds of attorney-client

22  privilege, see Pacific Fisheries, Inc. v. U.S., 539 F.3d 1143, 1148

23  (9th Cir. 2008)), tailored explanations of whether the

24  confidentiality of records withheld on attorney-client privilege

25  grounds have been maintained, and a more detailed explanation of

26  why the record of Stern's phone conversation attached to Record No.

27  761 is protected by the attorney-client privilege.  The Court HOLDS

28  IN ABEYANCE the motions for summary judgment as to these documents

**United States District Court**
For the Northern District of California

1  until the record is supplemented and the Court determines if

2  additional filings or <u>in camera</u> review is necessary.

3      **C.**    <u>**Deadline Allegations**</u>

4      The balance of the parties' submissions focuses on Plaintiffs'

5  allegations that the Fisheries Service and Fish and Wildlife

6  Service were tardy in responding to Plaintiffs' FOIA requests and

7  internal appeals.  Further, Plaintiffs argue that the Fisheries

8  Service has a pattern and practice of late and incomplete

9  responses.  Finally, Plaintiffs contend that the Fisheries Service

10  has deviated from Department of Commerce (of which the Fisheries

11  Service is a part) regulations and a prior ruling, <u>Oregon Natural</u>

12  <u>Desert Association v. Gutierrez</u>, 419 F. Supp. 2d 1284 (D. Or.

13  2006), addressing what "cutoff date" the agency may impose for its

14  searches.

15      The pattern and practice and cutoff date allegations are

16  repeated, with a fuller evidentiary record, in cross-motions for

17  summary judgment pending in the related case, <u>Our Children's Earth</u>

18  <u>Foundation v. National Marine Fisheries Service</u>, 14-4365 (N.D.

19  Cal.), and the Court will address them fully in a forthcoming order

20  in that case.  For the purpose of this order, the Court addresses

21  only the first question -- whether declaratory judgment should

22  issue that the Fisheries Service and FWS violated the FOIA's

23  internal deadlines in responding to Plaintiffs' requests and

24  internal appeals.

25       **1.**    <u>**Declaratory Judgment**</u>

26      Unless exceptional circumstances exist (in which case the

27  deadline is thirty working days), an agency must provide a

28  "determination" with respect to a FOIA request or internal appeal

within twenty working days of receipt.  See 5 U.S.C. §
552(a)(6)(A)(i)-(ii).  A "determination" need not be the full
production of documents, but at a minimum the agency must inform
the requester what documents it will produce and the exceptions it
will claim in withholding documents.  See Citizens for
Responsibility & Ethics in Wash. v. Fed. Election Comm'n, 711 F.3d
180, 184 (D.C. Cir. 2013).

In adopting the FOIA, Congress was specifically concerned that
agencies would delay in responding to requests, and as a result "an
agency's failure to comply with the FOIA's time limits is, by
itself, a violation of the FOIA."  Gilmore v. U.S. Dep't of Energy,
33 F. Supp. 2d 1184, 1187 (N.D. Cal. 1998); see also Long v. IRS,
693 F.2d 907, 910 (9th Cir. 1982) (concluding that an agency's
unreasonable delay in disclosing non-exempt documents violated the
FOIA and "courts have a duty to prevent those abuses").  As a
result, courts have found that entering declaratory judgment that
the agency violated the FOIA is appropriate when the agency has a
pattern and practice of violating these time limits, see Payne
Entertainment v. United States, 837 F.2d 486 (D.C. Cir. 1988), or
when the agency has violated the time limits in responding to a
particular set of requests, the agency's violations are consistent,
and they may recur.  See S. Yuba River, 2008 WL 2523819, at *6.

The Fisheries Service does not dispute that it did not provide
a "determination" for Plaintiffs' FOIA requests or internal appeals
within either the twenty or thirty working day timeline provided in
the statute, nor could it.  See Gov't Reply at 12 ("[The Fisheries
Service] does not dispute that it did not provide a full and final
'determination' on Plaintiffs' FOIA requests within 20 working

days."). On the contrary, the record is clear, undisputed, and troubling. The Fisheries Service's determination on Plaintiffs' first through fourth requests were, respectively, 295, 43, eight, and 99 days overdue. Malabanan Decl. ¶¶ 23, 33, 39-40; ECF No. 44 ("Schumacher Decl.") ¶ 5, 8. Similarly, the Fisheries Service responded to Plaintiffs' first internal appeal 24 days late, second appeal 80 days late, and third appeal 82 days late. Malabanan Decl. ¶¶ 25, 34, 41, Exs. 2, 3. As Congress recognized in enacting the FOIA:

> [i]nformation is often useful only if it is timely. Thus, excessive delay by the agency in its response is often tantamount to denial. It is the intent of this bill that the affected agencies be required to respond to inquiries and administrative appeals within specific time limits.

Gilmore, 33 F. Supp. 2d at 1187 (quoting H. Rep. No. 876, 93d Cong., 2d Sess. (1974)). In short, even though the Fisheries Service does not take the FOIA's deadlines seriously, "[t]here can be no doubt that Congress [did]." See id.

Nevertheless, the Fisheries Service argues, based on a recent D.C. Circuit decision, CREW, that the only consequence that flows from the agency's failure to respond within the statutory deadlines is that a FOIA requester may file suit without being subject to the ordinary requirement that he exhaust his administrative remedies. See CREW, 711 F.3d at 189; Elec. Privacy Info. Ctr. v. Dep't of Justice, 15 F. Supp. 3d 32, 41 (D.D.C. 2014) (finding that CREW "makes clear that the impact of blowing the 20-day deadline relates only to the requester's ability to get into court.'"). The Court concurs with the CREW court's persuasive interpretation of the statute. As a matter of statutory interpretation it is clear that

**United States District Court**
For the Northern District of California

1  the only legal consequence that flows directly from an agency's

2  failure to provide a determination within the statutory time limits

3  is the waiver of the administrative exhaustion requirement.

4  However, that says nothing about whether or not, once a FOIA

5  requester is in court, the district court cannot exercise its

6  discretionary authority to issue a judgment declaring that the

7  agency has, in fact, violated the statutory timeline.  See Payne,

8  837 F.2d at 494 ("The FOIA imposes no limits on courts' equitable

9  powers in enforcing its terms" and "unreasonable delays in

10 disclosing non-exempt documents violate the intent and purpose of

11 the FOIA, and the courts have a duty to prevent [such] abuses.").

12      The Court finds declaratory judgment is appropriate here.  As

13 the Fisheries Service repeatedly reminds the court, issuing a

14 declaratory judgment is discretionary.  See Olagues v. Russoniello,

15 770 F.2d 791, 803 (9th Cir. 1985).  However, as the Ninth Circuit

16 has explained, "[a] court declaration delineates important rights

17 and responsibilities and can be 'a message not only to the parties

18 but also to the public and has significant educational and lasting

19 importance.'"  Natural Res. Def. Council, Inc. v. EPA, 966 F.2d

20 1292, 1299 (9th Cir. 1992) (quoting Bilbrey ex rel. Bilbrey v.

21 Brown, 738 F.2d 1462, 1471 (9th Cir. 1984)).  Here, both the

22 statutory deadlines and their violation are clear, and the

23 repeated, routine violation of these deadlines by agencies has been

24 a continual source of concern for Congress.  As one report put it,

25 "many agencies have failed process FOIA requests within the

26 deadlines required by law.  These delays in responding to FOIA

27 requests continue as one of the most significant FOIA problems."

28 Gilmore, 33 F. Supp. 2d at 1187 (quoting H. Rep. No. 794, 104th

United States District Court
For the Northern District of California

Cong., 2d Sess. (1996)).  Although the Court and many others have recognized that agencies' resources are heavily taxed by the quantity and depth of FOIA requests, that does not grant the agency carte blanche to repeatedly violate congressionally mandated deadlines.  On the contrary, "[the Fisheries Service and Fish and Wildlife Service's] failure to comply with the FOIA's time limits is, by itself, a violation of the FOIA . . . ."  Id.; see also CREW, 711 F.3d at 189 ("We are intimately familiar with the difficulty that FOIA requests pose for executive and independent agencies.").

This is not to say that a declaratory judgment should always issue when the agency violates these time limits.  On the contrary, the issuance of declaratory judgments must always be guided by "whether a judgment will clarify and settle the legal relations at issue and whether it will afford relief from the uncertainty and controversy giving rise to the proceedings."  Nat'l Resources Def. Council, 966 F.2d at 1299.  However under these and similar circumstances, where the agency has repeatedly and substantially violated the time limits, and it is possible the violations will recur with respect to the same requesters, declaratory judgment is appropriate.  See S. Yuba River, 2008 WL 2523819, at *6.

As a result, Plaintiffs' request for declaratory judgment that the Fisheries Service failed to respond to Plaintiffs' FOIA requests and internal appeals within the statutory time limits is GRANTED.

### D.   **Claims Against FWS**

The only claim Plaintiffs appear to press against FWS is that, after receiving a referral of potentially relevant documents from

the Fisheries Service, FWS failed to process the referred documents within the statutory time limits.

The Fisheries Service's referral of documents to FWS is governed by the Department of Commerce's regulations for FOIA referrals.  In the relevant part, the regulations state that "[i]f a component receives a request for a record in its possession in which another Federal agency subject to the FOIA has the primary interest, the component shall refer the record to that agency for direct response to the requester."  15 C.F.R. § 4.5(b).  The FOIA provides that the need for consultation is an "unusual circumstance," and states that "consultation . . . shall be conducted with all practicable speed . . . ."  5 U.S.C. 552(a)(6)(B)(iii).

Based on the reference to "all practicable speed," FWS argues that the FOIA's statutory timelines do not apply to referrals for consultation.  This appears to be a novel argument, and the Court need not decide it.  Instead, regardless of whether the referral is governed by the general provision that no notice citing unusual circumstances "shall specify a date that would result in an extension for more than ten working days . . . ," 5 U.S.C. § 552(a)(6)(B)(i), or the specific term that agency consultations shall be conducted with "all practicable speed," declaratory judgment against FWS would be inappropriate under these circumstances.

Unlike the Fisheries Service, there is no allegation that FWS repeatedly violated the FOIA's time limits with respect to Plaintiffs' requests.  Furthermore, FWS is not named as a defendant in the related case, and there is no indication that Plaintiffs

have made repeated FOIA requests to FWS (or that Plaintiffs'
requests have been repeatedly referred to FWS) or that any
violations of the FOIA's time limits are likely to recur with
respect to Plaintiffs.  As a result, the Court finds that issuing a
declaratory judgment against FWS would neither "clarify and settle
the legal relations at issue [nor] . . . afford relief from the
uncertainty and controversy giving rise to the proceedings." See
Nat'l Resources Def. Council, 966 F.2d at 1299.

     As a result, Plaintiffs' request for declaratory judgment
against the Fish and Wildlife Service is DENIED.  Furthermore,
because Plaintiffs do not appear to challenge any of the Fish and
Wildlife Service's withholdings or redactions under the FOIA,
summary judgment is GRANTED in the Service's favor on those issues.

**V.    CONCLUSION**

     For the reasons set forth above, the cross-motions for summary
judgment are GRANTED IN PART and DENIED IN PART.  The Court will
HOLD IN ABEYANCE the motions regarding the Fisheries Service's
exemption claims pending the supplementation of the record ordered
within thirty (30) days of the signature date of this order.


     IT IS SO ORDERED


     Dated: March 30, 2015                _____

                                          UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California