**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| OUR CHILDREN'S EARTH FOUNDATION, et al.,<br><br>          Plaintiffs,<br><br>     v.<br><br>NATIONAL MARINE FISHERIES SERVICE, et al.,<br><br>          Defendants. | Case No. 14-4365 SC<br>Case No. 14-1130 SC<br><br>ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT |

## I.   **INTRODUCTION**

Now before the Court are cross-motions for partial summary judgment in this Freedom of Information Act ("FOIA") case.  ECF Nos. 12 ("Mot."), 17 ("Opp'n & Cross-Mot.").  Plaintiffs are two groups of environmental advocates seeking summary judgment on their claims that Defendants,[1] the National Marine Fisheries Service (the "Fisheries Service") and the United States Army Corps of Engineers

---

[1] The complaint, ECF No. 11 ("Compl.") names several other defendants: Penny Pritzker, Secretary of Commerce, William Stelle, Regional Administrator of the Fisheries Service, and John McHugh, Secretary of the Army.  Nevertheless, because this motion solely concerns FOIA claims against the Fisheries Service and the Corps, these defendants' actions are not directly at issue.  Thus, the Court will treat this order as though there were only two defendants, the Fisheries Service and the Corps.

**United States District Court**
For the Northern District of California

(the "Corps"), failed to comply with the FOIA in responding to Plaintiffs' requests for documents.  Additionally, Plaintiffs allege that the Fisheries Service has a pattern and practice of such failures.  Defendants disagree and have moved for summary judgment in their own right, arguing they have complied with the law.

Also pending before the Court and considered herein is a motion filed in case No. 14-1130 SC, ECF No. 64 ("Pls.' Mot. to Relate") and 66 ("Gov't Response to Mot. to Relate") to relate case No. 15-2558 JSC to the case at bar and to case No. 14-1130 SC. Case No. 14-1130 SC and this case have already been related.

The Court previously granted in part and denied in part cross-motions for summary judgment on similar FOIA issues in a related case, Our Children's Earth Foundation v. National Marine Fisheries Service, -- F. Supp. 3d --, No. 14-1130 SC, 2015 WL 1458156 (N.D. Cal. Mar. 30, 2015), and the underlying facts are more fully explained in that opinion.  Id. at *1-2.  Relevant to this motion, in its prior order, the Court declined to address allegations of a pattern and practice of FOIA violations by the Fisheries Service, noting that those same issues were raised here between the same parties with a fuller evidentiary record.  Id. at *8.

The cross-motions for summary judgment in this case are fully briefed, ECF Nos. 22 ("Pls.' Opp'n & Reply"), 23 ("Gov't Reply"),[2] and appropriate for resolution without oral argument under Civil Local Rule 7-1(b).  For the reasons set forth below the motions are GRANTED in part and DENIED in part.

---

[2] Also related but not directly at issue is Case No. 14-1130, ECF Nos. 60 ("Gov't Response"), 69 ("Pls.' Response").

**United States District Court**
For the Northern District of California

## II.   BACKGROUND

While this case concerns solely FOIA claims, Plaintiffs' underlying concerns are twofold: (1) an endangered fish, the Central California Coast Steelhead; and (2) a dam and associated water system, the Searsville Dam and "Lake Water System," owned by Stanford University.  Plaintiffs believe the Searsville Dam and Lake Water System have adversely impacted Steelhead population and habitat.  Through the four FOIA requests at issue in this case, FOIA requests addressed in the related case, and others, Plaintiffs seek information about the Steelhead, Stanford's activities, and a biological opinion issued by the Fisheries Service to the Corps supporting the Corps' issuance of a permit to Stanford for upgrades to the Lake Water System.

Plaintiffs' complaints are four-fold.  First, Plaintiffs believe that the Fisheries Service's search for records responsive to two of its FOIA requests were inadequate.  Second, Plaintiffs argue the Fisheries Service has improperly withheld or overly redacted responsive records under two exemptions in the FOIA.  Third, Plaintiffs contend that the Fisheries Service is defying Department of Commerce (of which the Fisheries Service is a part) regulations by cutting off their search for responsive records at the date the FOIA request is received rather than the date the search begins.  Plaintiffs refer to these dates as "search cutoff dates" and argue their net effect is to deprive Plaintiffs of documents created after the cutoff date but during the pendency of a search.  Finally, Plaintiffs argue the Court should issue a declaratory judgment that the Fisheries Service and the Corps' responses to Plaintiffs' requests were untimely, and issue

declaratory and injunctive relief to remedy the Fisheries Service's alleged pattern and practice of FOIA violations.

The Fisheries Service and the Corps have moved for summary judgment in their own right arguing that their searches were adequate, withholdings were justified, search cutoff dates were reasonable and not contrary to Department of Commerce regulations, and declaratory and injunctive relief are accordingly unwarranted.

## III. **LEGAL STANDARD**

Entry of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment should be granted if the evidence would require a directed verdict for the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986). "A moving party without the ultimate burden of persuasion at trial—– usually, but not always, a defendant —– has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).

"In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Id. "In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." Id. "The evidence of the nonmovant is to be believed, and

**United States District Court**
For the Northern District of California

4

all justifiable inferences are to be drawn in his favor." <u>Anderson</u>, 477 U.S. at 255.

FOIA cases are typically decided on motions for summary judgment. <u>Yonemoto v. Dept. of Veterans Affairs</u>, 686 F.3d 681, 688 (9th Cir. 2011) <u>as amended</u> (Jan. 18, 2012).  "To carry their summary judgment burden, agencies are typically required to submit an index and 'detailed public affidavits' that, together, 'identify the documents withheld, the FOIA exemptions claimed, and a particularized explanation of why each document falls within the claimed exemption.'"  <u>Id.</u> (quoting <u>Lion Raisins v. Dep't of Agric.</u>, 354 F.3d 1072, 1082 (9th Cir. 2004) (alterations in original)). These submissions are typically referred to as a <u>Vaughn</u> index, after <u>Vaughn v. Rosen</u>, 484 F.2d 820, 823-25 (D.C. Cir. 1973), and they must be "from 'affiants who are knowledgeable about the information sought' and 'detailed enough to allow court[s] to make an independent assessment of the government's claim of exemption.'" <u>Yonemoto</u>, 686 F.3d at 688 (internal alterations omitted) (quoting <u>Lion Raisins</u>, 354 F.3d at 1079).

**IV.   <u>DISCUSSION</u>**

The Court will address the adequacy of the search and improper withholding arguments first, before turning to Plaintiffs' requests for declaratory or injunctive relief.

**A.   <u>Adequacy of the Search</u>**

First, Plaintiffs challenge the adequacy of the Fisheries Service's search for records responsive to their first and second FOIA requests.

///

**United States District Court**
For the Northern District of California

To comply with the FOIA, an agency must conduct a "search reasonably calculated to uncover all relevant documents." Zemansky v. EPA, 767 F.2d 569, 571 (9th Cir. 1985) (quoting Weisberg v. U.S. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).  In so doing, "the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate."  Id. (quotation omitted) (emphasis in original).

To prevail on a motion for summary judgment, the agency must demonstrate "beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents." S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv., No. CIV. S-06-2845 LKK/JFM, 2008 WL 2523819, at *11 (E.D. Cal. June 20, 2008) (citing Zemansky, 767 F.2d at 571).  In so doing, the agency may rely on "reasonably detailed, non-conclusory affidavits and declarations submitted in good faith," id., describing "what records were searched, by whom, and through what process." Lawyers' Comm. for Civil Rights v. U.S. Dep't of the Treasury, 534 F. Supp. 2d 1126, 1131 (N.D. Cal. 2008) (quoting Steinberg v. U.S. Dep't of Justice, 23 F.3d 548, 552 (D.C. Cir. 1994)).  The purpose of this requirement is "to afford a FOIA requester an opportunity to challenge the adequacy of the search and to allow the district court to determine if the search was adequate in order to grant summary judgment."  Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990).

As in the related case, the Fisheries Service has submitted a declaration from Gary Stern, Branch Chief of the Fisheries Service's San Francisco Bay Branch, which is itself a branch of the

1   Fisheries Service's North-Central Coast Office located in Santa

2   Rosa, California.  ECF No. 20 ("Stern Decl.").

3        As to Plaintiffs' first request, the North-Central Coast

4   Office was tasked with searching for responsive records because it

5   conducted all the Fisheries Service's work involving Stanford,

6   Searsville, and San Francisquito Creek and those locations fall

7   within the North-Central Coast Office's geographic area of

8   responsibilities.  Id. at ¶ 5.  After reviewing Plaintiffs' first

9   request, Stern "tasked all [Fisheries Service] staff within the San

10  Francisco Bay Branch and administrative support staff within the

11  [North-Central Coast Office] with searching for potentially

12  responsive documents."  Id. at ¶ 5.  The staff searched hard copy

13  and electronic files including emails, office files, and "relevant

14  project folders" for responsive records.  Id. at ¶ 6.  The staff

15  also conducted "relevant key word searches for 'Searsville,'

16  'Stanford,' and 'San Francisquito Creek' as well as for the names

17  of the individuals involved in relevant email discussions (e.g.,

18  'Corinne Gray', 'Roy Torres', 'Holly Costa', and 'Tom Zigterman')."

19  Id. (errors in original).  The Fisheries Services' Records

20  Management System ("RMS") was used to identify the "relevant

21  project files," and then staff retrieved the identified folders.

22       The search for records responsive to Plaintiffs' second

23  request was similar, and Stern also "instructed all [Fisheries

24  Service] staff within the [North-Central Coast Office] to search

25  for responsive documents."  Id. at ¶ 9.  The search included hard

26  copy and electronic records including office files, emails, and

27  "relevant project folders (e.g., Section 7 consultations with U.S.

28  Army Corps of Engineers for Stanford's Steelhead Habitat

**United States District Court**
For the Northern District of California

1   Enhancement Project and California Water Service facilities on Bear

2   Creek files)." Id. at ¶ 10.  Furthermore, as with the first

3   search, "[t]he staff conducted relevant key word searches for

4   'Searsville,' 'Stanford,' 'San Francisquito Creek,' 'Bear Creek' as

5   well as for the names of individuals involved in relevant email

6   discussions (e.g., 'Erin McCauley', 'Serge Glushkoff', 'Michael

7   Love' and 'Tom Zigterman')." Id. (errors in original).

8        Stern's declaration is insufficient to establish the adequacy

9   of the Fisheries Service's search as to either challenged request.

10  First, while Stern provides examples of "relevant project folders,"

11  "relevant key word searches," and individuals involved in "relevant

12  email discussions," he does not "specify who at the [North-Central

13  Coast Office] searched the . . . files" aside from referring simply

14  to "staff." See Lion Raisins, Inc. v. U.S. Dep't of Agric., 636 F.

15  Supp. 2d 1081, 1105 (E.D. Cal. 2009).  Second, it is not clear

16  whether Stern's parenthetical examples include all the search terms

17  utilized or are merely meant to be illustrative. See Hiken v.

18  Dep't of Def., 521 F. Supp. 2d 1047, 1054 (N.D. Cal. 2007) ("The

19  disclosure of search terms . . . may be helpful in evaluating the

20  adequacy of the search.").  Third, while Stern describes how

21  "relevant" project folders were identified, the references to

22  searching "relevant" emails and office files and email discussions

23  are conclusory, and he does not "explain in reasonable

24  detail . . . what process or procedure was utilized that [led] to

25  the selection of those particular" folders, files, or email

26  discussions aside from project folders identified using the

27  Fisheries Service's RMS.  See Lion Raisins, 636 F. Supp. 2d at

28  1105.  Finally, Stern's declaration suggests that "he is simply

**United States District Court**
For the Northern District of California

1  relaying hearsay" regarding the search because, by his description,

2  "the staff at the [North-Central Coast Office]" conducted the

3  search.   See id. at 1105-06; Stern Decl. at ¶ 6.

4     Because the Court lacks sufficient basis to conclude the

5  Fisheries Service conducted an adequate search, the Court ORDERS

6  the Fisheries Service to supplement the factual record within 30

7  days of the signature date of this Order.   Within 14 days of the

8  supplementation, Plaintiffs may file a response and the Defendants

9  may file a reply.   The Court HOLDS IN ABEYANCE the motion to

10 summary judgment as to the adequacy of the search and the related

11 request for declaratory judgment that the Fisheries Service's

12 searches were inadequate.

13     **B.    Withholdings and Redactions**

14     The FOIA's goal is to "ensure an informed citizenry, vital to

15 the functioning of a democratic society, needed to check against

16 corruption and to hold the governors accountable to the governed."

17 NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978).   While

18 this goal reflects a general philosophy of full agency disclosure,

19 John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989), FOIA

20 incorporates nine exemptions, which reflect the need to balance the

21 public's interest in full disclosure against the sometimes

22 legitimate need for the Government to maintain secrecy.   See 5

23 U.S.C. § 552(b)(1)-(9).   Because "[t]hese limited exceptions do not

24 obscure the basic policy that disclosure, not secrecy, is the

25 dominant objective of the Act," Dep't of Interior v. Klamath Water

26 Users Protective Ass'n, 532 U.S. 1, 7-8 (2001) (citation omitted),

27 exemptions are to be narrowly construed, and "information not

28 ///

falling within any of the exemptions has to be disclosed . . . ."
<u>Yonemoto</u>, 686 F.3d at 687.

The Fisheries Service withheld a total of 78 documents in whole or in part in response to Plaintiffs' first and second FOIA requests.  Plaintiffs argue that the explanations provided by the Fisheries Service are inadequate as to 11 documents withheld under Exemption (b)(5), which protects materials produced as part of the agency's deliberative process or protected by attorney-client privilege, and one document redacted pursuant to Exemption 7(C), which provides protection for personal information in law enforcement records.  5 U.S.C. § 552(b)(5) & (b)(7)(C).  The Court will address Exemption (b)(5) first before turning to Exemption (7)(C).

> 1. <u>Exemption (b)(5)</u>

First, Plaintiffs argue that the Fisheries Service has failed to adequately justify some of its withholdings under FOIA Exemption (b)(5), which protects materials produced as part of the agency's deliberative process or covered by attorney-client privilege.  <u>Id.</u> at (b)(5).  The Fisheries Service has invoked this exception in withholding 11 documents in their entirety.

Exemption (b)(5) applies to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(6).  As a result, the rule protects from disclosure "those documents normally privileged in the civil discovery context."  <u>NLRB v. Sears, Roebuck & Co.</u>, 421 U.S. 132, 149 (1975).  There are two such privileges at issue here: attorney-client privilege and the executive "deliberative process" privilege.  The

**United States District Court**
For the Northern District of California

1  Court finds all the documents potentially covered by the attorney-
2  client privilege are covered by the deliberative process privilege,
3  and therefore only discusses the deliberative process here.

4      Deliberative process privilege seeks "'to prevent injury to
5  the quality of agency decisions' by ensuring that the 'frank
6  discussion of legal or policy matters,' in writing, within the
7  agency, is not inhibited by public disclosure." Maricopa Audubon
8  Soc. v. U.S. Forest Serv., 108 F.3d 1089, 1092 (9th Cir. 1997)
9  (quoting Sears, 421 U.S. at 150-51).  To fall within the
10  deliberative process privilege, the material withheld or redacted
11  must be "'predecisional' in nature and must also form part of the
12  agency's 'deliberative process.'"  Id. at 1093 (quoting Sears, 421
13  U.S. at 151-52) (emphasis in original).  Predecisional documents
14  "may include recommendations, draft documents, proposals,
15  suggestions, and other subjective documents which reflect the
16  personal opinions of the writer rather than the policy of the
17  agency."  Assembly of State of Cal. v. U.S. Dep't of Commerce, 968
18  F.2d 916, 920 (9th Cir. 1992) (quoting Formaldehyde Inst. v. Dep't
19  of Health & Human Servs., 889 F.2d 1118, 1122 (D.C. Cir. 1989))
20  (internal citations and quotation marks omitted).  Documents
21  falling within that definition are part of the agency's
22  "deliberative process" if disclosing those documents "would expose
23  an agency's decisionmaking process in such a way as to discourage
24  candid discussion within the agency and thereby undermine the
25  agency's ability to perform its functions."  Id. (quoting
26  Formaldehyde, 889 F.2d at 1122).

27      All but one of the challenged (b)(5) withholdings are drafts
28  of a biological opinion eventually issued by the Fisheries Service

**United States District Court**
For the Northern District of California

to the Corps related to the Corps' issuance of Clean Water Act permits for Stanford's "Steelhead Habitat Enhancement Project." See ECF No. 19 ("Malabanan Decl.") Ex. 1 ("Vaughn Index") at FOIA 1 Record Nos. 45-51, 58-59; FOIA 2 Record Nos. 6, 22. As the Fisheries Service's Vaughn Index shows, the withheld records are "working drafts subject to revision" for a biological opinion that was being prepared for release (and eventually were), and reflect, among other things, deliberations between National Oceanic and Atmospheric Administration staff and scientists about how to proceed with the biological opinion. Id. The Court agrees with Plaintiffs that the Fisheries Service was required to base its biological opinion on the best scientific information available. See 16 U.S.C. § 1536(a)(2). However, the drafts sought reflect the interpretations of that scientific information by staff and scientists, thus reflecting their personal opinions on the science. Cf. Nat'l Wildlife Fed'n v. U.S. Forest Serv., 861 F.2d 1114, 1118 (9th Cir. 1988) (rejecting the argument that "opinions or recommendations regarding facts or consequences of facts are not automatically ineligible for exemption from disclosure" under the deliberative process privilege). Thus, the Court finds the Fisheries Service has adequately justified its withholdings of all but one of the draft biological opinions.

Conversely, the Court finds Fisheries Service did not adequately justify its withholding for Record Number 1 to Plaintiffs' first FOIA request. The Fisheries Service's Vaughn Index states that this record "consists of an email from a NOAA employee to her supervisor with a summary and her review on a SHEP monitoring report (pages 1-2) as well as an attachment organizing

1   that summary/review on a chart (page 3)." Vaughn Index at FOIA 1

2   Record 1.  The Fisheries Service states that this document was

3   prepared at a time when the Fisheries Service was "considering

4   whether to issue a revised [Steelhead Habitat Enhancement Project]

5   biological opinion." Id.  The fact that an agency was

6   contemporaneously considering whether to issue a revised opinion

7   does not equate to a showing that the document itself was "prepared

8   in order to assist an agency decisionmaker in arriving at his

9   decision." See Assembly of State of Cal., 968 F.2d at 920.  Nor is

10  the Fisheries Service's mere consideration of whether to issue a

11  revised biological opinion sufficient to show the deliberative

12  nature of the document, because the Vaughn Index says nothing of

13  how this document could "reveal the mental processes of

14  decisionmakers" or be "tantamount to the 'publication of the

15  evaluation and analysis of the multitudinous facts' conducted by

16  the agency . . . ." Nat'l Wildlife, 861 F.2d at 1119.

17      The Fisheries Service has also fallen short of its burden as

18  to the segregability.  Although the Fisheries Service properly

19  withheld some of these documents as discussed, it did so in full

20  while providing a declaration that merely gave a blanket statement

21  that "[t]o the best of [FOIA Coordinator Ana Liza Malabanan's]

22  knowledge, to the extent . . . there is factual material . . . in

23  the withheld portions of the . . . documents listed in the Vaughn

24  Index, that information is not segregable from the withheld

25  portions." Malabanan Decl. ¶ 126.  This is clearly insufficient.

26  See ACLU of N. Cal. v. FBI, No. 12-cv-03728-SI, 2014 WL 4629110, at

27  *9 (N.D. Cal. Sept. 16, 2014) (concluding a similarly conclusory

28  ///

United States District Court
For the Northern District of California

1   declaration was insufficient to carry the agency's burden on

2   segregability).

3       In light of these issues with the Fisheries Service's

4   submissions, the Court ORDERS the Fisheries Service to supplement

5   the record within 30 days of the signature date of this Order to

6   provide sufficient explanation for the non-segregability of the

7   records withheld in full under Exemption (b)(5) and a more detailed

8   explanation of why Record Number 1 to Plaintiffs' first FOIA

9   request is covered by the deliberative process privilege.  Within

10  14 days of the supplementation, Plaintiffs may file a response and

11  the Defendants may file a reply.  The Court HOLDS IN ABEYANCE the

12  motions for summary judgment as to these documents until the record

13  is supplemented.

14          **2.   <u>Exemption 7(C)</u>**

15      Next, Plaintiffs challenge the redaction of the "names of an

16  [Office of Law Enforcement] agent, informants, witnesses,

17  government personnel, or other third parties" from an investigative

18  report created by an Office of Law Enforcement special agent.

19  <u>Vaughn</u> Index at FOIA 1 Record 75.

20      Exemption 7(C) authorizes the withholding of "records or

21  information compiled for law enforcement purposes" only to the

22  extent they "could reasonably be expected to constitute an

23  unwarranted invasion of personal privacy . . . ."  5 U.S.C. §

24  552(b)(7)(C).  The document containing the redacted names is an

25  investigative report created by a law enforcement agent, thus the

26  Court finds it was "compiled for law enforcement purposes . . . ."

27  <u>Id.</u>  Thus, the only remaining step is "balanc[ing] the privacy

28  interest protected by the exemption[] against the public interest

14

in government openness that would be served by disclosure." See Lahr v. Nat'l Transp. Safety Bd., 569 F.3d 964, 973 (9th Cir. 2009).

The privacy interests protected by Exemption 7(C) are "a broad range of concerns relating to an 'individual's control of information concerning his or her person,' and an 'interest in keeping personal facts away from the public eye.'" Id. at 974 (quoting U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press, 489 U.S. 749, 763, 769 (1989)) (internal citations omitted). Certainly, "identifying information such as names, addresses, and other personal information falls within the ambit of privacy concerns under FOIA." Assoc. Press v. U.S. Dep't of Def., 554 F.3d 274, 285 (2d Cir. 2009) (citation omitted). Moreover:

> One who serves his state or nation as a career public servant is not thereby stripped of every vestige of personal privacy, even with respect to the discharge of his official duties. Public identification of any of these individuals could conceivably subject them to harassment and annoyance in the conduct of their official duties and in their private lives.

Keys v. Dep't of Homeland Sec., 570 F. Supp. 2d 59, 68 (D.D.C. 2008), (quoting Nix v. United States, 572 F.2d 998, 1006 (4th Cir. 1978).

Because the Government has identified a cognizable privacy interest, "the only relevant public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." Lahr, 569 F.3d at 974 (quoting Bibles v. Or. Natural Desert Ass'n, 519 U.S. 355, 355-56 (1997)). Here, Plaintiffs' assert a

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1  public interest exists in releasing the redacted names because

2  doing so will aid Plaintiffs in investigating whether Fisheries

3  Service law enforcement officer Ray Torres "was conducting an

4  investigation of Stanford's [Endangered Species Act] violations

5  without being informed of highly pertinent information" other

6  Fisheries Service personnel already possessed, where said personnel

7  "were oddly being directed not to assist with Mr. Torres'

8  investigation." Pls.' Opp'n & Reply at 19. However,

9

10    [w]here the public interest advanced is that officials
      were negligent or that they otherwise improperly
11    performed their duties, the requester must establish
      'more than a bare suspicion' of wrongdoing by
12    'produc[ing] evidence that would warrant a belief by a
      reasonable person that the alleged Government
13    impropriety might have occurred.'

14  Lahr, 569 F.3d at 974 (quoting Nat'l Archives & Records Admin. v.

15  Favish, 541 U.S. 157, 174 (2004)).

16     Here, the only evidence of any alleged improprieties is the

17  unredacted portions of the report itself. The Court finds this to

18  be an insufficient basis for a reasonable person to conclude that

19  the alleged improprieties occurred. Plaintiffs try to offer

20  additional evidence, namely the statement of an individual in the

21  Fisheries Service's Protected Resource Division that "he and his

22  staff had other priorities and he had no staff available to assist

23  [Torres] with [his] investigation." See ECF No. 22 ("Costa Reply

24  Decl.") Ex. 1 at 8. Plaintiffs assert this supports that employees

25  were being directed not to assist with the investigation. The

26  Court disagrees. This does not "warrant a belief by a reasonable

27  person that the alleged Government impropriety might have

28  occurred." Lahr, 569 F.3d at 974. Moreover, even if Plaintiffs'

concern were warranted, that would provide a justification for releasing the name of the individual who refused to speak to Torres, not the names of everyone in the report.[3]

The Court therefore finds that the Fisheries Service's redaction of the names in this report was justified. Accordingly, summary judgment is GRANTED in the Fisheries Service's favor as to this document.

### C. **Declaratory and Injunctive Claims**

The balance of the parties' submissions focuses on Plaintiffs' claims for declaratory and injunctive relief. Plaintiffs allege that the Fisheries Service and Fish and Wildlife Service were tardy in responding to Plaintiffs' FOIA requests and referring documents for review by the Corps, used unreasonable cutoff dates for its searches, and has a pattern and practice of such delays and unreasonable cutoff dates for its searches.[4]

Now Plaintiffs seek declaratory judgments that: (1) the Fisheries Service was untimely in responding to the FOIA requests at issue here; (2) that the Corps likewise was untimely in responding to referrals from the Fisheries Service; (3) the Fisheries Service's cutoff dates violate the FOIA; (4) that the Fisheries Service has a pattern and practice of unreasonable delays

---

[3] Plaintiff's elsewhere suggest that Defendants have released these types of names in the past and that reasons provided are not sufficiently specific. Pls.' Response at 2. Even if the Court were to find the Fisheries had previously disclosed certain names -- a finding the Court does not make -- that would not defeat the privacy interest all future agents may have or forevermore strip the agency of raising a legal protection provided by statute.

[4] The pattern and practice and cutoff date allegations were also asserted in cross-motions for summary judgment in the related case, Our Children's Earth Foundation v. National Marine Fisheries Service, No. 14-1130 (N.D. Cal.), however the Court declined to address them there, noting that they were repeated in this case with a fuller evidentiary record.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   in (a) responding to FOIA requests, (b) referring documents to

2   other agencies, and (c) withholding documents without adequate

3   exemption showings.  Furthermore, Plaintiffs believe the Fisheries

4   Service's delays, cutoff date policies, and the alleged patterns

5   and practices all violate the FOIA and argue the Court should

6   enjoin the Service to comply with the FOIA.

7        The Court addresses the delay allegations first, before

8   turning to the Fisheries Service's cutoff date policies,

9   Plaintiffs' pattern and practice claims, and finally, injunctive

10  relief.

11            **1.   Delays**

12       Unless exceptional circumstances exist (in which case the

13  deadline is thirty working days), an agency must provide a

14  "determination" with respect to a FOIA request or internal appeal

15  within twenty working days of receipt.  See 5 U.S.C. §

16  552(a)(6)(A)(i)-(ii).  A "determination" need not be the full

17  production of documents, but at a minimum the agency must inform

18  the requester what documents it will produce and the exceptions it

19  will claim in withholding documents.  See Citizens for

20  Responsibility & Ethics in Wash. v. Fed. Election Comm'n ("CREW"),

21  711 F.3d 180, 184 (D.C. Cir. 2013).

22       In adopting the FOIA, Congress was specifically concerned that

23  agencies would delay in responding to requests, and as a result "an

24  agency's failure to comply with the FOIA's time limits is, by

25  itself, a violation of the FOIA." Gilmore v. U.S. Dep't of Energy,

26  33 F. Supp. 2d 1184, 1187 (N.D. Cal. 1998); see also Long v. IRS,

27  693 F.2d 907, 910 (9th Cir. 1982) (concluding that an agency's

28  unreasonable delay in disclosing non-exempt documents violated the

**United States District Court**
For the Northern District of California

FOIA and "courts have a duty to prevent these abuses").  As a result, courts have found that entering declaratory judgment that the agency violated the FOIA is appropriate when the agency has a pattern and practice of violating these time limits.  See Payne Entertainment v. United States, 837 F.2d 486, 494-95 (D.C. Cir. 1988).  Courts have also found declaratory judgment appropriate when the agency has violated the time limits in responding to a particular set of requests, the agency's violations are consistent, and they may recur.  See S. Yuba River, 2008 WL 2523819, at *6.

     The Fisheries Service does not dispute -- and cannot dispute -- that it did fail to provide a "determination" for Plaintiffs' FOIA requests within either the twenty or thirty working day timeline provided in the statute.  The records in both this and the related case show a clear and undisputed breach of this requirement.  The Fisheries Service's determination on Plaintiffs' first and second FOIA requests were 76 and 27 days overdue respectively.  Malabanan Decl. ¶¶ 27-28, 35.

     As Congress recognized in enacting the FOIA:

> [i]nformation is often useful only if it is timely. Thus, excessive delay by the agency in its response is often tantamount to denial.  It is the intent of this bill that the affected agencies be required to respond to inquiries and administrative appeals within specific time limits.

Gilmore, 33 F. Supp. 2d at 1187 (quoting H. Rep. No. 876, 93d Cong., 2d Sess. (1974)).  In short, even though the Fisheries Service does not take the FOIA's deadlines seriously, "[t]here can be no doubt that Congress [did]."  See id.

     Defendant Fisheries Service cites to CREW for support that deadlines are not absolute and declarative and injunctive relief

are not appropriate.  Opp'n & Cross-Mot. at 13-14, 22-25.  The
Court agrees that CREW does clarify that "if the agency does not
adhere to FOIA's explicit timelines, the 'penalty' is that the
agency cannot rely on the administrative exhaustion requirement to
keep cases from getting into court."  CREW, 711 F.3d at 189.
However, CREW was considering whether administrative remedies had
been exhausted and thus the case could continue, rather than
whether declaratory or injunctive relief should issue.  Id. at 190.
Therefore, Defendant's citation to CREW is insufficient to support
a conclusion that a prayer for relief should go unanswered.

On these facts, as in the related case, the Court finds that
declaratory judgment should issue that the Fisheries Service
violated the FOIA's statutory timelines.  "A court declaration
delineates important rights and responsibilities and can be 'a
message not only to the parties but also to the public and has
significant educational and lasting importance.'"  Natural Res.
Def. Council, Inc. v. EPA, 966 F.2d 1292, 1299 (9th Cir. 1992)
(quoting Bilbrey ex rel. Bilbrey v. Brown, 738 F.2d 1462, 1471 (9th
Cir. 1984)).  Here, both the statutory deadlines and their
violation are clear, and the repeated, routine violation of these
deadlines by agencies has been a continual source of concern for
Congress.  As one report put it, "many agencies have failed [to]
process FOIA requests within the deadlines required by law.  These
delays in responding to FOIA requests continue as one of the most
significant FOIA problems."  Gilmore, 33 F. Supp. 2d at 1187
(quoting H. Rep. No. 794, 104th Cong., 2d Sess. (1996)).  Although
the Court and many others have recognized that agencies' resources
are heavily taxed by the quantity and depth of FOIA requests

United States District Court
For the Northern District of California

20

**United States District Court**
For the Northern District of California

(especially in light of budget constraints that limit the personnel and resources assigned to an agency), that does not grant the agency carte blanche to repeatedly violate congressionally mandated deadlines.  On the contrary, "[the Fisheries Service and Fish and Wildlife Service's] failure to comply with the FOIA's time limits is, by itself, a violation of the FOIA . . . ."  Id.; see also CREW, 711 F.3d at 189 ("We are intimately familiar with the difficulty that FOIA requests pose for executive and independent agencies.").[5]

As a result, Plaintiffs' request for declaratory judgment that the Fisheries Service violated the FOIA's statutory timelines in responding to its requests is GRANTED.

This is not to say that a declaratory judgment should always issue when the agency violates these time limits.  On the contrary, the issuance of declaratory judgments must always be guided by "whether a judgment will clarify and settle the legal relations at issue and whether it will afford relief from the uncertainty and controversy giving rise to the proceedings." Nat'l Resources Def. Council, 966 F.2d at 1299.  However under these and similar circumstances, where the Fisheries Service has repeatedly and substantially violated the time limits, and it is possible the violations will recur with respect to the same requesters, declaratory judgment is appropriate.  See S. Yuba River, 2008 WL 2523819, at *6.

///

---

[5] The Court is further concerned about the ongoing nature of these violations and the need for declaratory relief upon review of motion to relate, addressed herein, where it appears the Fisheries Services may have (yet again) failed to observe FOIA deadlines.

United States District Court
For the Northern District of California

By the same token, however, the Court declines to enter declaratory judgment against the Corps.  As with the Fish and Wildlife Service in the related case, there is no allegation that the Corps repeatedly violated the FOIA's time limits with respect to Plaintiffs' requests.  Furthermore, the Corps is not named as a defendant in the related case, and there is no indication that Plaintiffs have made repeated FOIA requests to the Corps (or that Plaintiffs' requests have been repeatedly referred to the Corps) or that any violations of the FOIA's time limits are likely to recur with respect to Plaintiffs.  Allegations suggest that delay may have existed from the Fisheries Service in making the referral, but that is not the fault of the Corps.[6]  As a result, the Court finds that issuing a declaratory judgment against the Corps would neither "clarify and settle the legal relations at issue [nor] . . . afford relief from the uncertainty and controversy giving rise to the proceedings."  See Nat'l Resources Def. Council, 966 F.2d at 1299.

As a result, Plaintiffs' request for declaratory judgment against the Corps is DENIED.

### 2.  Cutoff Dates

"Records responsive to a request shall include those records within the Department's possession and control as of the date the Department begins its search for them."  15 C.F.R. § 4.5(a).  Here, the point of contention is not centered around when the requests

_____

[6]  In granting declaratory judgment against the Fisheries Service, the Court does not opine on whether the referral to the Corps was untimely due to violation of any particular legal standard cited by parties because by any standard offered the time taken to make the determination as to the need for a referral was too long.  This contributed to the Court's decision to issue declaratory judgment against the Fisheries Service.  That said, because the Court agrees referral was appropriate (albeit late), the Court evaluates the timeliness of the receiving agency (here, the Corps) separately.

United States District Court
For the Northern District of California

were received but when the search actually began.  Defendants claim
the search actually began the day the task was assigned to relevant
personnel.  See Stern Decl., ¶¶ 7-11.  Plaintiffs argue that
evidence suggests that while the assignments were made on the
aforementioned date, nobody began to actually search until later,
thus mandating a later cut-off date.  See Malabanan Decl. ¶¶ 19-22.

It seems that this is not actually a legal dispute, as both
sides seem to want to apply the same legal standard claiming that
the appropriate cut-off date is the day searching began.  Insofar
as either side argues for the application of any other legal
conclusion, the Court rejects the argument.  See South Yuba River
Citizens League v. NMFS, 2008 WL 2523819, *14-15 (E.D. Cal. June
20, 2008) (holding date-of-search cutoff proper); see also Edmonds
Inst. v. U.S. Dept. of Interior, 383 F. Supp. 2d 105, 111 (D.D.C.
2005) ("The D.C. Circuit has all but endorsed the use of date-of-
search as the cut-off date for FOIA requests") (citing Pub. Citizen
v. Dept. of State, 276 F.3d 634, 642 (D.C. Cir. 2002)); Edmonds
Inst. v. U.S. Dep't of Interior, 383 F. Supp. 2d 105, 111 (D.D.C.
2005) ("Under the date-of-search approach, [a plaintiff] can, with
relative ease, file a second FOIA request for documents created
since [the cutoff date]").

If this is not a legal dispute, it must be a factual one.
Here, from the evidence presented, the Court can see a reasonable
finder of fact being able to conclude that it is more likely than
not that the search started the day the task was assigned to staff
or -- in light of the timeline, other substantive responsibilities,
and limited staff available -- that it is more likely than not that
the date of tasking was some unspecified number of days prior to

the date the agency actually began its search.  Factual disputes of this nature are not appropriate for summary judgment.  As FOIA cases are routinely resolved on summary judgment, it is likely that a more detailed account by the agency of exactly when it began its actual search would clarify the proper search cutoff dates and allow the Court to resolve this issue on summary judgment.[7]

In light of this concern, the Court ORDERS the Fisheries Service to supplement the record within 30 days of the signature date of this Order to provide additional evidence regarding the date(s) that searches actually began vice the date that searches were merely tasked.  Within 14 days of the supplementation, Plaintiffs may file a response and the Defendants may file a reply.  The Court HOLDS IN ABEYANCE the motions for summary judgment as to cutoff dates until the record is supplemented.

### 3.   Plaintiffs' pattern and practice claims

Plaintiffs allege a pattern and practice claim, suggesting that the responses to all FOIA matters have been consistently and impermissibly slow.  Yet the Court is cognizant of a motion (addressed later herein) to relate yet a third case involving a FOIA violation by the Fisheries Service that may (or may not) have bearing on whether such a pattern and practice still exists.  To assist the Court in evaluating whether declaratory or injunctive relief is still appropriate, Plaintiffs are ORDERED to provide supplemental briefing as to:

---

[7] A conclusory statement such as the one provided in the Stern Declaration may often be sufficient to establish this date.  Here, however, where the dispute centers on said date and Plaintiff notes evidence in the record that suggests a contrary conclusion, the Court is loath to accept a conclusory remark with no further proof in the form of (for example) documentary evidence or testimony by a staff member who actually began a search on the relevant day.

**United States District Court**
For the Northern District of California

(1) whether Case No. 15-2558 SC is now moot due to satisfaction of the July 9, 2015 deadline referenced in its brief (ECF No. 66 at 3); and

(2) whether Case No. 15-2558 SC provides sufficient new evidence of compliance by Defendant National Marine Fisheries Service to impact Plaintiffs' pattern-and-practice claims.

The Court ORDERS the Fisheries Service to supplement the factual record and address the two listed concerns within 30 days of the signature date of this Order.  Within 14 days of the supplementation, Plaintiffs may file a response and Defendants may file a reply.  The Court HOLDS IN ABEYANCE the motion to summary judgment as to the request for declaratory judgment that the Fisheries Service has a pattern and practice of failing to observe FOIA deadlines.

### 4. <u>Injunctive Relief</u>

The Fisheries Service is ORDERED to comply with FOIA and its deadlines, due to the Court's finding that the Fisheries Service has failed to do so previously and the potential that these offenses might continue.  Yet the Court, having so ordered and having GRANTED declaratory relief, DENIES WITHOUT PREJUDICE further injunctive relief at this time.  The Court cannot accept good faith as a shield which fully protects Defendants from rebuke.  <u>See, e.g.</u>, <u>Mayock v. I.N.S.</u>, 714 F. Supp. 1558, 1561 (N.D. Cal. 1989), <u>rev'd on other grounds by</u> <u>Mayock v. Nelson</u>, 938 F.2d 1006 (9th Cir. 1991) (finding that FOIA may be violated even absent bad faith). However, the Court is also sympathetic to the fact that Plaintiffs appear to be repeatedly making large requests in sufficiently rapid succession that the Fisheries Service is unable to complete its

///

**United States District Court**
For the Northern District of California

response to one request before receiving a second.[8]  Evidence of good faith and the case involved in the motion to relate suggests efforts may have been made to comply with the deadlines, and implies that upon receipt of this order the Fisheries Service <u>will</u> significantly improve its future performance in continuation of its good faith without an injunction by the Court.  Therefore, further injunctive relief is DENIED WITHOUT PREJUDICE.  The Court will entertain a new petition for injunctive relief at such time as declaratory relief alone fails.

### D.   <u>Claims Against FWS</u>

The only claim Plaintiffs appear to press against FWS is that, after receiving a referral of potentially relevant documents from the Fisheries Service, FWS failed to process the referred documents within the statutory time limits.

The Fisheries Service's referral of documents to FWS is governed by the Department of Commerce's regulations for FOIA referrals.  In the relevant part, the regulations state that "[i]f a component receives a request for a record in its possession in which another Federal agency subject to the FOIA has the primary interest, the component shall refer the record to that agency for direct response to the requester."  15 C.F.R. § 4.5(b).  The FOIA provides that the need for consultation is an "unusual circumstance," and states that "consultation . . . shall be

///

---

[8] While this is in part the fault of Defendants' failure to comply with deadlines, the Court exercises its discretion to deny further relief where it seems Plaintiffs have flooded Defendants with complex FOIA requests each requiring thousands of pages of document review and now complain about untimeliness because the agency is too busy to provide a complete, timely response.

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1  conducted with all practicable speed . . . ."  5 U.S.C.

2  552(a)(6)(B)(iii).

3      Based on the reference to "all practicable speed," FWS argues

4  that the FOIA's statutory timelines do not apply to referrals for

5  consultation.  The general provision is that no notice citing

6  unusual circumstances "shall specify a date that would result in an

7  extension for more than ten working days."  5 U.S.C. §

8  552(a)(6)(B)(i).  Irrespective of whether the referral here is

9  bound by this general provision or the specific term that agency

10  consultations shall be conducted with "all practicable speed," the

11  Court nonetheless finds declaratory judgment against FWS would be

12  inappropriate under the circumstances in this case.[9]

13      Unlike the Fisheries Service, there is no allegation that FWS

14  repeatedly violated the FOIA's time limits with respect to

15  Plaintiffs' requests.  Furthermore, FWS is not named as a defendant

16  in the related case, and there is no indication that Plaintiffs

17  have made repeated FOIA requests to FWS (or that Plaintiffs'

18  requests have been repeatedly referred to FWS) or that any

19  violations of the FOIA's time limits are likely to recur with

20  respect to Plaintiffs.  As a result, the Court finds that issuing a

21  declaratory judgment against FWS would neither "clarify and settle

22  the legal relations at issue [nor] . . . afford relief from the

23  uncertainty and controversy giving rise to the proceedings."  See

24  Nat'l Resources Def. Council, 966 F.2d at 1299.

25      As a result, Plaintiffs' request for declaratory judgment

26  against the Fish and Wildlife Service is DENIED.  Furthermore,

27  because Plaintiffs do not appear to challenge any of the Fish and

28

---

[9] Accordingly, the Court does not opine on this legal argument.

United States District Court
For the Northern District of California

1   Wildlife Service's withholdings or redactions under the FOIA,

2   summary judgment is GRANTED in the Defendant's favor on those

3   issues.

4

5   **V.   <u>MOTION TO RELATE</u>**

6        The Court now turns to a motion to relate case No. 15-2558 JSC

7   to the case at bar and to the already related case, No. 14-1130 SC.

8   Civil Local Rule 3-12 states that an action is related to another

9   when:

10       (1) The actions concern substantially the same parties,
           property, transaction or event; and

11

12       (2) It appears likely that there will be an unduly burdensome
           duplication of labor and expense or conflicting results if

13           the cases are conducted before different Judges.

14       Review of the motion to relate by Plaintiffs suggest that

15   there are reasons both to grant and deny this request.  Case No.

16   14-1130 SC, ECF No. 64.  The response by Defendants request that

17   cases not be related.  ECF No. 66.  However, in making that

18   request, Defendants note that the facts in Case No. 15-2558 JSC may

19   undermine the pattern-and-practice claim made by Plaintiffs in the

20   cases pending before the Court.  ECF No. 66 at 2.

21       The Court agrees that Case No. 15-2558 JSC involves slightly

22   differing parties, a differing underlying FOIA request, and that

23   the limited issue raised is unrelated to the issues raised in the

24   other cases already before the Court.  However, Plaintiffs seek

25   declaratory relief and injunctive relief alleging an ongoing

26   pattern and practice for failure of the Fisheries Services to abide

27   by the terms of FOIA.  A case that presents another potential

28   violation or -- as the Federal Defendant suggests, proof of

1    compliance undermining the pattern and practice alleged by

2    Plaintiffs -- should be evaluated in the same light as the other

3    cases involving substantially the same agency responding to the

4    same FOIA requestors seeking information about substantially the

5    same matter.  Therefore, there may be an unduly burdensome

6    duplication of labor or conflicting result if Case No. 15-2558 JSC

7    is heard by another Judge.

8         Accordingly, the Court finds that Case No. 15-2558 JSC is

9    related to a case assigned to the Court per Civil Local Rule 3-12.

10   The Clerk of Court is ORDERED to reassign the case, re-numbered as

11   No. 15-2558 SC.  Case management conferences will be rescheduled,

12   and parties shall adjust the dates for the conference, disclosures,

13   and reports required by Fed R. Civ P. 16 and 26 to match.  Any

14   dates for hearings-noticed motions exclusively filed under former

15   Case No. 15-2558 JSC are VACATED and must be re-noticed by the

16   moving party.  ADR deadlines and case management order deadlines

17   (except for those related to court appearances) remain in effect.

18   However, upon review of the complaint underlying Case No. 15-2558

19   JSC, the purpose of the FOIA requests by Plaintiffs is aimed at the

20   same ends and the Court is justifiably concerned as to whether the

21   overall compliance or lack thereof in this third case impacts the

22   need for the declaratory judgment sought in Case Nos. 14-1130 SC

23   and 14-4365 SC.

24

25   **VI.   CONCLUSION**

26        For the reasons set forth above, the cross-motions for summary

27   judgment are GRANTED IN PART and DENIED IN PART.  The Court will

28   HOLD IN ABEYANCE the motions regarding the Fisheries Service's

exemption claims, adequacy challenge, cutoff dates, and pattern and practice allegations pending the supplementation of the record ordered to begin within thirty (30) days of the signature date of this order.

IT IS SO ORDERED

Dated: July 20, 2015

UNITED STATES DISTRICT JUDGE