**United States District Court**
For the Northern District of California

1

2

3

4

5                    IN THE UNITED STATES DISTRICT COURT

6                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8                                          )  Case No. 14-4365 SC
                                           )  Case No. 14-1130 SC
   OUR CHILDREN'S EARTH FOUNDATION,        )  Case No. 15-2558 SC
9  et al.,                                 )
                                           )  ORDER ON SUPPLEMENTAL BRIEFING
10          Plaintiffs,                     )  RELATED TO, GRANTING IN PART,
                                           )  AND DENYING IN PART MOTIONS FOR
11      v.                                  )  SUMMARY JUDGMENT AND ORDER TO
                                           )  SHOW CAUSE
12  NATIONAL MARINE FISHERIES              )
   SERVICE, et al.,                        )
13                                          )
            Defendants.                     )
14                                          )
                                           )
15  _____)

16

17  **I.    INTRODUCTION**

18          Now before the Court is what remains of cross-motions for

19  partial summary judgment in this Freedom of Information Act

20  ("FOIA") case.[1]  This includes five issues the Court held in

21  abeyance pending three supplemental briefs requested in the Court's

22  previous Order, ECF No. 25 ("SJ Order").[2]  Based on supplemental

23  briefing, evidence submitted therewith, and the reasons set forth

24  below, the Court GRANTS IN PART and DENIES IN PART the remainder of

25  the cross-motions, and ORDERS certain parties to SHOW CAUSE.

26  _____
    [1] See ECF Nos. 12 ("Mot."), 17 ("Opp'n & Cross-Mot.").
27  [2] ECF Nos. 27 ("Supp. Mot."), 28 ("Supp. Opp'n"), 30 ("Supp.
    Reply").  The SJ Order is available at Our Children's Earth Found.
28  v. Nat'l Marine Fisheries Serv., No. 14-1130 SC, 2015 WL 4452136
    (N.D. Cal. July 20, 2015).

United States District Court
For the Northern District of California

## II.  **BACKGROUND**

The Court first granted in part and denied in part cross-motions for summary judgment on similar FOIA issues in a related case, Our Children's Earth Foundation v. National Marine Fisheries Service, 85 F.Supp.3d 1074 (N.D. Cal. Mar. 30, 2015), and the underlying facts are most fully explained in that opinion.  Id. at 1079-1081.  Relevant to the next motion considered by the Court (the cross-motions partially resolved by the SJ Order), the Court declined to address an alleged pattern-and-practice of FOIA violations, noting that those same issues were raised in the then-still-pending motion addressed by the SJ Order between the same parties with a fuller evidentiary record.  Id. at *8.

Plaintiffs are two groups of environmental advocates seeking summary judgment on their claims that the remaining relevant Defendant failed to comply with the FOIA in responding to Plaintiffs' requests for documents.  Plaintiffs also alleged that there is a pattern-and-practice of such failures.  The only remaining, relevant Defendant is the National Marine Fisheries Service (the "Fisheries Service," "NMFS," or "Defendants"), who disagreed with Plaintiffs and moved for summary judgment in its own right on the basis it had complied with the law.  The Court considered arguments by parties, briefly reviewed the facts, and resolved much of the debate through the Court's SJ Order.  The Court adopts the fact sections from its two earlier orders and incorporates them as though fully set out herein.

What now remains after the SJ Order are five specific issues, each of which was held in abeyance pending supplemental briefing ordered by the Court.

**United States District Court**
For the Northern District of California

III. <u>**LEGAL STANDARD**</u>

Entry of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary judgment should be granted if the evidence would require a directed verdict for the moving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251 (1986).  "A moving party without the ultimate burden of persuasion at trial —- usually, but not always, a defendant —- has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment."  <u>Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.</u>, 210 F.3d 1099, 1102 (9th Cir. 2000).

"In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  <u>Id.</u>  "In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact."  <u>Id.</u>  "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  <u>Anderson</u>, 477 U.S. at 255.

FOIA cases are typically decided on motions for summary judgment.  <u>Yonemoto v. Dept. of Veterans Affairs</u>, 686 F.3d 681, 688 (9th Cir. 2011) <u>as amended</u> (Jan. 18, 2012).  "To carry their summary judgment burden, agencies are typically required to submit an index and 'detailed public affidavits' that, together, 'identify the documents withheld, the FOIA exemptions claimed, and a

**United States District Court**
For the Northern District of California

particularized explanation of why each document falls within the claimed exemption.'"  Id. (quoting Lion Raisins v. Dep't of Agric., 354 F.3d 1072, 1082 (9th Cir. 2004) (alterations in original)). These submissions are typically referred to as a Vaughn index, after Vaughn v. Rosen, 484 F.2d 820, 823-25 (D.C. Cir. 1973), and they must be "from 'affiants who are knowledgeable about the information sought' and 'detailed enough to allow court[s] to make an independent assessment of the government's claim of exemption.'" Yonemoto, 686 F.3d at 688 (internal alterations omitted) (quoting Lion Raisins, 354 F.3d at 1079).

Insofar as the Court discussed the law in its SJ Order, unless subsequently challenged by the parties, the Court adopts those discussions and integrates them as though fully set forth herein.

**IV.   DISCUSSION**

There are five issues for the Court to still consider.  They are: (1) the adequacy of the search; (2) whether Record No. 1 was withheld appropriately pursuant to Exemption (b)(5); (3) whether the Fisheries Service has cured its showing of segregability of factual information in certain records; (4) whether the Fisheries Service used appropriate cut-off dates; and (5) pattern-and-practice concerns.  The Court considers each in turn.

**A.   Adequacy of the Search**

In its SJ Order, the Court specified four reasons why the original Declaration from Gary Stern, Branch Chief of the Fisheries Service's San Francisco Bay Branch, ECF No. 20 ("Stern Decl."), was insufficient to establish that the search was adequate.  The four reasons were: (1) failure to specify who specifically searched; (2)

4

United States District Court
For the Northern District of California

failure to clarify the precise terms used to search as opposed to giving examples that might be illustrative; (3) failure to explain in reasonable detail how particular folders, files, or emails were selected to be included in the search; and (4) concern that Mr. Stern was relying entirely on hearsay.  See SJ Order at 8.  In a supplemental declaration filed in response to the SJ Order, Mr. Stern remedied all of these concerns.  He specified by name and position who searched, provided precise search terms that appear to the Court to be properly tailored for the relevant FOIA requests, and he explained in detail how he determined which folders, files, and emails were selected.  See ECF No. 27-3 ("Supp. Stern Decl.") ¶¶ 5-15.  While there is still some hearsay included, Mr. Stern himself searched, was personally involved with the search, or else directly supervised the search, and accordingly is able to testify as to his personal involvement.  See id.

Plaintiffs nonetheless object on the basis of hearsay.  Their two grounds are unpersuasive.  They first argue there must be an affidavit from others who conducted the search.  Yet the Court does not need to have an affidavit from each person engaged in the search; such a practice would be exceptionally cumbersome on the government, and needlessly so.  In the Ninth Circuit, as a general matter "[a]n affidavit from an agency employee responsible for supervising a FOIA search is all that is needed to satisfy the personal knowledge requirement of Federal Rule of Civil Procedure 56(e).")  Lahr v. National Transp. Safety Bd., 569 F.3d 964, 989 (9th Cir. 2009) (quoting Carney v. U.S. Dep't of Justice, 19 F.3d 807, 814 (2d Cir. 1994)).  Applying this rule, district courts have overruled comparable hearsay objections.  See Council on Am.-

United States District Court
For the Northern District of California

Islamic Relations, California v. F.B.I., 749 F. Supp. 2d 1104, 1119 (S.D. Cal. 2010) (quoting Lahr); see also Hersh & Hersh v. U.S. Dep't of Health & Human Servs., No. C 06-4234 PJH, 2008 WL 901539, at *4 (N.D. Cal. Mar. 31, 2008) (courts "have overruled objections based on lack of personal knowledge as long as the supervisor in charge of coordinating the agency's search efforts, or responsible for same, has submitted an affidavit describing the search." (citing Carney)).   The Court finds that the affidavits submitted are from the supervisor in charge of coordinating the search efforts (Mr. Stern) or person responsible for (portions of) the search (Ms. Malbananan), and thus OVERRULES the objection.

Plaintiffs also object to the limited information related to the search of the Office for Law Enforcement (OLE).  Ms. Malabanan was personally involved in the search by forwarding requests and coordinating with the Office for Law Enforcement to receive responsive records in their possession.  See ECF No. 19 ("Malabanan Decl.") ¶¶ 20-21.  While Ms. Malabanan's degree of involvement was far more limited than that of Mr. Stern (and accordingly less persuasive), the Court is still satisfied that the affidavit provides information from a coordinator responsible for the search describing a search made by a specific person at a specific agency. Accordingly, the Court again OVERRULES Plaintiffs' objection.

Based on the foregoing analysis, the Court now considers whether the agency has conducted a "search reasonably calculated to uncover all relevant documents." Zemansky v. EPA, 767 F.2d 569, 571 (9th Cir. 1985) (quoting Weisberg v. U.S. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).  The Court is required to resolve "not whether there might exist any other documents possibly

**United States District Court**
For the Northern District of California

responsive to the request, but rather whether the <u>search</u> for those documents was <u>adequate</u>."  <u>Id.</u> (quotation omitted) (emphasis in original).  Here, the Court finds the Fisheries Service has met this standard.

To prevail on a motion for summary judgment, the agency must demonstrate "beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents." <u>S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.</u>, No. CIV. S-06-2845 LKK/JFM, 2008 WL 2523819, at *11 (E.D. Cal. June 20, 2008) (citing <u>Zemansky</u>, 767 F.2d at 571).  In so doing, the agency may rely on "reasonably detailed, non-conclusory affidavits and declarations submitted in good faith," <u>id.</u>, describing "what records were searched, by whom, and through what process." <u>Lawyers' Comm. for Civil Rights v. U.S. Dep't of the Treasury</u>, 534 F. Supp. 2d 1126, 1131 (N.D. Cal. 2008) (quoting <u>Steinberg v. U.S. Dep't of Justice</u>, 23 F.3d 548, 552 (D.C. Cir. 1994)).  The Court finds the Fisheries Service has done so here.  Therefore, the Court GRANTS summary judgment in favor of NMFS, and DENIES summary judgment as requested by Plaintiffs.

**B.**   **<u>Whether Record Number 1 was Properly Withheld</u>**

The Court next turns to whether Record No. 1 was properly withheld.  After review of the supplemental briefs, and given the partial disclosure of the document, the Court FINDS that the remainder of Record No. 1 was properly withheld.

Exemptions are to be narrowly construed, and "information not falling within any of the exemptions has to be disclosed . . . ." <u>Yonemoto</u>, 686 F.3d at 687.  Under Exemption (b)(5), materials produced as part of the agency's deliberative process or protected

United States District Court
For the Northern District of California

by attorney-client privilege need not be disclosed. 5 U.S.C. § 552(b)(5).  Exemption (b)(5) applies to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(6).  As a result, the rule protects from disclosure "those documents normally privileged in the civil discovery context."  NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975).  There are two such privileges at issue here: attorney-client privilege and the executive "deliberative process" privilege.  The Court previously found that "all the documents potentially covered by the attorney-client privilege are covered by the deliberative process privilege," SJ Order at 11, and thus focuses mainly on the deliberative process here.  Also per the SJ Order, the

> [d]eliberative process privilege seeks "'to prevent injury to the quality of agency decisions' by ensuring that the 'frank discussion of legal or policy matters,' in writing, within the agency, is not inhibited by public disclosure." Maricopa Audubon Soc. v. U.S. Forest Serv., 108 F.3d 1089, 1092 (9th Cir. 1997) (quoting Sears, 421 U.S. at 150-51).  To fall within the deliberative process privilege, the material withheld or redacted must be "'predecisional' in nature and must also form part of the agency's 'deliberative process.'" Id. at 1093 (quoting Sears, 421 U.S. at 151-52) (emphasis in original). Predecisional documents "may include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." Assembly of State of Cal. v. U.S. Dep't of Commerce, 968 F.2d 916, 920 (9th Cir. 1992) (quoting Formaldehyde Inst. v. Dep't of Health & Human Servs., 889 F.2d 1118, 1122 (D.C. Cir. 1989)) (internal citations and quotation marks omitted).  Documents falling within that definition are part of the agency's "deliberative process" if disclosing those documents "would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." Id. (quoting Formaldehyde, 889 F.2d at 1122).

SJ Order at 11.

**United States District Court**
For the Northern District of California

The Fisheries Service's updated Vaughn Index reflects that this is an "employee's draft chart and summary [which] were prepared in order to assist agency decisionmakers in arriving at a decision whether to issue a revised SHEP biological opinion."  ECF No. 27-4 Ex. A ("Supp. Vaughn Index") at 1.  The Fisheries Service no longer relies upon what the agency may have been doing when the document was drafted, but focuses now directly on the content of the document itself.  With the supplemental information provided in the updated Vaughn Index, the description in the supplemental declaration by Ms. Malabanan, and the portion of the document released, the Court can now reasonably deduce that the document could "reveal the mental processes of decisionmakers" or be "tantamount to the publication of the evaluation and analysis of the multitudinous facts conducted by the agency . . . ."  Nat'l Wildlife, 861 F.2d at 1119 (citation omitted).  While perhaps not directly meant to assist decisionmakers arrive at a decision, it is clear the author meant to educate a more senior member of the office on whether and why to request a (perhaps higher-up) decisionmaker arrive at a specific decision.  The fact that "the contents of the draft chart and the employee's summary contain a number of mistakes and misinterpretations such that release . . . would lead to public confusion" reinforces that this document shows an internal debate, to include a mistaken personal opinion, exposure of which would "discourage candid discussion within the agency."[3]  Assembly, 968 F.2d at 920.  Accordingly, Exemption (b)(5) does apply.  See Maricopa Audubon, 108 F.3d at 1092.

---

[3] The Court does not reach whether this provides a separate, independent ground to deny disclosure.

**United States District Court**
For the Northern District of California

Plaintiffs' three objections are unavailing.  Plaintiffs object to Ms. Malabanan's declarations based on hearsay.  For the same reasons cited with respect to the first issue, above, the Court rejects Plaintiffs' hearsay argument regarding the declarations.  See Lahr, 569 F.3d at 989; Council on Am.-Islamic Relations, 749 F. Supp. 2d at 1119; Hersh, 2008 WL 901539, at *4. Plaintiffs also object for lack of foundation, reasoning that Ms. Malabanan lacked the personal expertise to make the claims she asserts.  The Court accepts unrebutted portions of her declarations to the contrary.  See ECF No. 30-1 ("Supp. 2d. Malabanan Decl.") ¶¶ 7-9.  In addition, the Court notes that functionally Plaintiffs' foundational objection is no different from their hearsay objection -- NMSF need only provide and rely on an affidavit from a person supervising or responsible for the search, which is precisely what they do.  Accordingly, the Court rejects this foundation objection.

Finally, Plaintiffs argue that even were the Court to accept Ms. Malabanan's testimony (which the Court does), the document may be predecisional but is not deliberative within the meaning of Maricopa Audubon, 108 F.3d at 1093.  Yet the Fisheries Service makes clear that exposure of the remainder of the document in question would provide nothing more than the personal opinions of a single, lower-level worker (opinions based in part on materials later deemed factually erroneous) who was trying to have a frank and open dialogue with a senior employee on whether and how to make a recommendation to a decisionmaker.[4]  Thus revealing the document in full would "expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and

---

[4] The underlying report has been released.  Supp. Reply at 3.

thereby undermine the agency's ability to perform its functions." Assembly, 968 F.2d at 920 (quoting Formaldehyde, 889 F.2d at 1122). Therefore, the Court rejects this objection.

Accordingly, Plaintiffs' objections are OVERRULED, the Court finds the document is both predecisional and deliberative per Maricopa Audubon, and therefore the Court finds the document qualifies under Exemption (b)(5).  Summary Judgment is thus GRANTED in favor of the Fisheries Service and DENIED as to Plaintiffs.

**C.    Segregbility of Factual Information in Certain Records**

The Court next considers whether the Fisheries Service has cured its showing of segregability of factual information in certain records.  The Court OVERRULES Plaintiffs hearsay and foundation objections, consistent with earlier rulings herein.  See Lahr, 569 F.3d at 989; Council on Am.-Islamic Relations, 749 F. Supp. 2d at 1119; Hersh, 2008 WL 901539, at *4; Supp. 2d. Malabanan Decl. ¶¶ 1-3, 7-8.  The Court also accepts that failure to justify Record No. 6 was inadvertent, and considers it offered by the Fisheries Service (and objected to by Plaintiffs) in a manner the same as all other similarly situated records.  The only issue remaining is whether the segregability explanations are adequate. The Ninth Circuit recently clarified:

> It is not reasonable to interpret our precedent to require the district court to take on the role of document clerk, reviewing each and every document an agency withholds. A district court must take seriously its role as a check on agency discretion, but this does not require a page-by-page review of an agency's work.

> The district court may rely on an agency's declaration in making its segregability determination. [Pac. Fisheries, Inc. v. United States, 539 F.3d 1143, 1148 (9th Cir. 2008)].  Agency affidavits that are sufficiently detailed are presumed to be made in good faith and may be taken at face value.  [Hunt v. C.I.A., 981 F.2d 1116, 1119 (9th

**United States District Court**
For the Northern District of California

Cir. 1992)].  In short, a district court is not required to conduct an independent in camera review of each withholding unless an agency declaration lacks sufficient detail or bears some indicia of bad faith by the agency.

Hamdan v. U.S. Dep't of Justice, 797 F.3d 759, 779 (9th Cir. Aug. 14, 2015).  Hamdan continued to explain that:

> An agency must describe the document or information being withheld in sufficient detail to allow the plaintiffs and the court to determine whether the facts alleged establish the corresponding exemption. Pac. Fisheries, 539 F.3d at 1148.  We have not held that the manner of that description must take any particular format, so long as it is sufficiently detailed.

Hamdan, 797 F.3d at 780.

Hamdan then examined a series of examples "[i]n the interest of clarifying [this] circuit's segregability standard." Id.  The first was by the Department of State ("DOS"), the second was by the Federal Bureau of Investigation ("FBI"), and the third was by the Defense Intelligence Agency ("DIA").  The DOS provided an individualized explanation and cite the corresponding objection for each record.  Id.  In some (but not all) cases, the DOS even noted that the "withheld portions are so inextricably intertwined with the non-exempt portion, that any segregable material would not be meaningful." Id.  Good faith was shown by evidence supporting their careful review of the documents, in one instance releasing a document with all but a single sentence redacted.  Id.  The FBI provided less robust declarations but they were sufficient to allow the district court to take them at face value, having identified the documents by number and providing specific reasons why disclosure would be harmful.  Id.  The FBI stated that "[n]o reasonably segregable, nonexempt portions were withheld from plaintiffs." Id.  This was supported by the partially redacted documents released.  Hamdan thus found both examples passed muster.

United States District Court
For the Northern District of California

Conversely, the DIA's showing was found to be insufficient. There, the DIA's declarations "lack sufficient detail to allow the district court to determine that the claimed exemptions apply throughout all of the documents." Id. The problem stemmed from little individualized information about the documents. In all cases, the same reason was given and the documents were entirely withheld, even though the documents varied in length and level of classification. Id. at 781. Moreover, the DIA cited inconsistent reasons for exemptions in its declarations versus its Vaughn Index.

In its SJ Order, published prior to Hamdan, the Court found that the Fisheries Service had failed to meet its burden on reasoning that mirrored the circumstances of the DIA. SJ Order at 12. The Fisheries Service withheld documents in full and merely gave a blanket statement that "[t]o the best of [FOIA Coordinator Ana Liza Malabanan's] knowledge, to the extent . . . there is factual material . . . in the withheld portions of the . . . documents listed in the Vaughn Index, that information is not segregable from the withheld portions." Malabanan Decl. ¶ 126. The Court found, consistent with Hamdan, that "[t]his is clearly insufficient." SJ Order at 12 (citing ACLU of N. Cal. v. FBI, No. 12-cv-03728-SI, 2014 WL 4629110, at *9 (N.D. Cal. Sept. 16, 2014) (concluding a similarly conclusory declaration was insufficient to carry the agency's burden on segregability)). Rather than order in camera review, the Court asked for clarification by the agency.

Here, like the DOS's filing, the supplemental Vaughn index provides an explanation for each document and cites to the specific FOIA exemption that applies. Yet like the FBI or DIA submissions, the declaration was not as robust as it could have been, and like

**United States District Court**
For the Northern District of California

the DIA submission it often repeated the same justification in the
same language for each of the records.  Even so, like the DOS and
FBI, all but 5 lines on page 1 of document 45 were disclosed, 1
page of document 48 was disclosed, 2 pages of document 46, 51, and
59 were disclosed, 4 pages of document 58 were disclosed,[5] 5 pages
of documents 49 and 50 were disclosed, and 8 pages of document 47
were disclosed; only document 22 (78 pages) and Record No. 6 (43
pages) were withheld in their entirety.  See generally Supp. Vaughn
Index; Supp. 2d. Malabanan Decl. ¶ 4.  In addition, the
supplemental Vaughn index is consistent with the declarations.  See
ECF No. 27-4 ("Supp. Malabanan Decl.") ¶¶ 5-14.  Therefore, on the
whole, this case seems most analogous to the submission by the FBI,
where the declarations are not ideal but the disclosures and cited
exceptions show enough good faith that the Court should accept the
agency's explanations at face value.

Accepting the agency's explanations at face value, the Court
finds that here the "factual material is so interwoven with the
deliberative material" that it is not segregable.  See United
States v. Fernandez, 231 F.3d 1240, 1247 (9th Cir. 2000).  Unlike
later cases applying Fernandez, the Fisheries Service clearly
considered each document and tried to release some portion.  C.f.
Kowack v. U.S. Forest Serv., 766 F.3d 1130, 1135 (9th Cir. Sept. 9,
2014) (the Court was unable to make an independent assessment where
the government did not even say if it tried to segregate factual
information or provide enough detail to conclude that portions were
interwoven, per Fernandez).  Insofar as Kowack suggests "a stand-

---

[5] This calculation assumes that the ledger is part of the overall
34 pages of the document.

alone fact section" may exist and be disclosed, the Fisheries Service has satisfied the Court that such sections do not exist, have already been disclosed, or would be interwoven.  <u>See generally</u> Supp. <u>Vaughn</u> Index; Supp. Malabanan Decl.; <u>see also</u> Supp. Mot. at 3-4.  Therefore, the Court finds that the Fisheries Service has satisfied its obligation to segregate and disclose facts.

This finding expressly does not extend to the ledger in Document 58.  Upon closer examination, the justification for withholding those 11 pages is that it was provided for review to the attorney for the agency, and therefore automatically becomes privileged.  This is incorrect; while communications are privileged and attorney work product is privileged, an otherwise unprivileged document does not gain any protections simply because it was sent to a lawyer for review.  The Court has found it appropriate to accept the supplemental <u>Vaughn</u> index at face value, so it must now accept the explanation offered as the primary justification.[6] Accordingly, the justification is inadequate.  Within 10 days of the date of this Order, the Fisheries Service is ORDERED to produce those portions of the ledger which are not directly privileged or provide an explanation why the ledger is also exempted.  Plaintiffs are free to challenge any withholding in a new motion, but may do so only insofar as the rationale is inconsistent with this Order.

Accordingly, notwithstanding the Court's ORDER related to the 11 page ledger of Document 58, the Court GRANTS summary judgment in

---

[6] The Court suspects the supplemental <u>Vaughn</u> index is just poorly worded, and that the ledger is actually a log of communication between the attorney and the client Fisheries Service meant to capture the question-and-answer style back-and-forth between the two, thereby simplifying application of the attorney's advice to specific provisions.  However, such a suspicion is pure speculation and not a proper basis for a judicial ruling.

1  favor of the Fisheries Service and DENIES summary judgment at to

2  Plaintiffs.

3  **D.   <u>Cut-off Dates</u>**

4  The Court next turns to whether the Fisheries Service used

5  appropriate cut-off dates.  In its SJ Order at 23, the Court

6  identified that this was a factual dispute, but that further

7  details from parties may resolve that dispute as FOIA cases are

8  routinely resolved on summary judgment.  Parties have since

9  supplemented the record, and the Court finds that there is no

10  longer any factual dispute to further delay summary judgment.

11  The Court OVERRULES Plaintiffs' objections as irrelevant.  <u>See</u>

12  Supp. Opp'n at 11-13.  (The Court will, however, consider these

13  objections insofar as they are relevant to pattern-and-practice

14  allegations.)  Plaintiffs fail to recognize or rebut that the

15  Fisheries Service provided the Court a clear date upon which the

16  searches began.  <u>See</u> Supp. Stern Decl. ¶¶ 5, 10.  While it is

17  possible that other employees began searching on a later date, Mr.

18  Stern provides specific dates that he, as the principle subject

19  matter expert ("SME"), began his search for FOIA 5 (June 27, 2014)

20  and FOIA 6 (August 13, 2014).  <u>Id.</u>  "Records responsive to a

21  request shall include those records within the Department's

22  possession and control as of the date <u>the Department</u> begins its

23  search for them." 15 C.F.R. § 4.5(a) (emphasis added).  The Court

24  agrees that a better policy is the search start date of each

25  individual SME, <u>see</u> Supp. Malbanan Decl. ¶ 18(b), but finds on

26  these specific facts that Mr. Stern's search alone was sufficient

27  to establish when <u>the Department</u> began to search, and thus a cut-

28  off date in these particular searches.

Accordingly, the Court finds that the Fisheries Service fulfilled its obligation by providing responsive documents up to but not later than the June 27, 2014 and August 13, 2014 respective cut-off dates.  Therefore, summary judgment is GRANTED in favor of the Fisheries Service and DENIED as to Plaintiffs, except insofar as parties identify any documents that should have been produced given these cut-off dates but were not.  If any such documents exist, the Court ORDERS they be produced or else identified to the Court within 10 days of the date of this order along with any applicable exemption.  In identifying and producing documents, parties shall <u>exclude</u> those documents on which the Court has already ruled.

### E.   <u>Pattern-and-Practice Concerns</u>

Plaintiffs allege a pattern and practice claim, suggesting that the responses to all FOIA matters have been consistently and impermissibly slow.  The Court asked parties to address two pattern-and-practice concerns before the Court ruled: (1) whether Case No. 15-2558 SC ("<u>OCE III</u>") is moot; and (2) whether <u>OCE III</u> provides new evidence of compliance relevant to the larger, still-pending pattern-and-practice concern.  Upon consideration of these issues and prior materials briefed, the Court now GRANTS IN PART and DENIES IN PART requests for declaratory and injunctive relief.

Plaintiffs requested that the Court find <u>OCE III</u> prudentially moot.  Supp. Opp'n at 7.  Defendants did not oppose.  Supp. Reply at 10.  Therefore, the Court finds <u>OCE III</u> MOOT and accordingly <u>OCE III</u> is hereby DISMISSED WITH PREJUDICE.

That done, the Court was also interested in whether the now-mooted <u>OCE III</u> case offered an additional data point to suggest

**United States District Court**
For the Northern District of California

that there was not a continued pattern and practice of tardiness or failure to comply with the law. The Court considers several pieces of new data presented via supplemental briefing relating to OCE III and other relevant matters.

Several pieces of information suggest that insofar as there may have been a pattern-and-practice, it is being corrected. OCE III is itself inconclusive, as parties dispute whether or not it was an instance of a late versus timely disclosure (a matter not reached by the Court). However, OCE III does show a trend toward more speedy disclosures. The average processing time for processing 125 simple requests was a mere 9 working days, 20 at most. ECF No. 27-2 ("Swisher Decl.") ¶ 9.[7] The NMFS West Coast Region appears to have an updated process in place, using modern software, additional personnel, and policy changes (e.g., how the cut-off date changes where there are multiple SMEs assigned) to speed up its process. See Supp. Malabanan Decl. ¶¶ 15-18. These changes have helped reduce the "FOIA backlog" of NMFS's parent agency, the National Oceanic and Atmospheric Administration (NOAA), "from 171 backlogged requests to 121 backlogged requests . . . and NMFS reduced its FOIA backlog from 118 backlogged requests to 58 backlogged requests, representing [a] 51% decrease in the NMFS backlog." Swisher Decl. ¶ 10. This progress is noteworthy and quite hopeful.

Yet this hopeful news is eclipsed by the evidence the Court has received showing an unmistakable history that the Fisheries Service fails to meet its statutory deadlines under FOIA and causes

---

[7] Conversely, 260 complex requests (such as those often filed by Plaintiffs) took an average of 111 working days.

**United States District Court**
For the Northern District of California

1   Plaintiffs (and likely others similarly situated) to suffer

2   unpredictable, unreasonable delays.  The fact that there was in the

3   first place a backlog of over 100 cases to so dramatically reduce

4   is itself a red flag indicating the potential for FOIA compliance

5   issues.  This potential is confirmed by evidence Plaintiffs provide

6   of a pattern-and-practice of FOIA violations through affidavits,

7   briefs, FOIA response letters, and inconsistencies within the

8   NMFS's own documentation.  Exhibits submitted by Plaintiffs show a

9   history of late responses, ranging but not limited to 4 days, 18

10  days, 51 days, 9 months, 10 months, and ongoing.  See ECF No. 29 ¶¶

11  2-17.  The fact that these responses were tardy is not disputed by

12  the Fisheries Service, who simply reminds the Court that statutory

13  deadlines are not absolute.  Supp. Reply at 8-9.  Yet laxity in the

14  rules cannot justify the sheer volume of the violation history

15  evidenced just between Plaintiffs and the Fisheries Service.  Be it

16  concerning allegations of false reporting leading to an actual

17  delay of 2-days, see ECF No. 29, ¶ 19, or tales that a response to

18  another organization (not Plaintiffs) was delayed by 2-years, see

19  Supp. Opp'n at 4; ECF No. 28-1 Ex. 4, the evidence is clear as to

20  whether a pattern-and-practice existed in the past.[8]  Moreover,

21  Plaintiffs provide the Court a reasonable basis to believe that

22  these infractions will be ongoing.  See ECF No. 28-3 ¶¶ 6-8

23  (indicating Plaintiffs will continue to make a similar volume of

24  ───────────────

[8] The Court is not persuaded by the average response times.  See
25  Swisher Decl. ¶ 9-10.  Whereas the average processing time for
    simple requests looks good, the complex request processing time is
26  concerning.  Also, an average can be skewed by several unusually
    high or low numbers.  That the median on complex requests is 63
27  working days, see Swisher Decl. ¶ 9, means that at least half of
    the complex request take more than two months, and the outliers
28  include statutory violations significant enough to draw the average
    up to 111 working days (almost half a year).

**United States District Court**
For the Northern District of California

comparably complex FOIA requests).  The Court has previously granted declaratory judgment upon such a showing.  See SJ Order at 19-21 (citing S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv., No. CIVS-06-2845 LKK/JFM, 2008 WL 2523819, at *6 (E.D. Cal. June 20, 2008) ("The consistency of the[] violations and the possibility that they might recur" justified issuing declaratory judgment.)).

In its SJ Order, the Court ordered the Fisheries Service to comply with FOIA and its deadlines, finding that the Fisheries Service "has failed to do so previously and the potential that these offenses might continue." SJ Order at 25.  The Court's reasoning to then deny without prejudice further injunctive relief was simple:  while the Court cannot accept good faith as a shield to fully protect Defendants from rebuke, the ongoing efforts of the Fisheries Service to improve suggested that intervention by the Court may not be necessary to fix ongoing violations.  Id. at 25-26.  The Court stands by its earlier reasoning, and its belief that some leniency in the exercise of its discretion may be merited. However, the Court cannot turn a blind eye to the evidence put forth by Plaintiffs.

Therefore, the Court hereby GRANTS declaratory relief and states: (1) that the Fisheries Service has previously been engaged in a pattern-and-practice of failure to meet FOIA deadlines; (2) that the Fisheries Service has previously provided responses that were frequently and unreasonably delayed; (3) that due to these delays the Fisheries Service effectively provided no ability to FOIA requestors to anticipate when data might be provided; and (4) that due to these delays information was often provided after a

1   long enough period of time that the data could be out-of-date,

2   effectively negating its value and effectuating a complete denial

3   of information.

4       The Court also GRANTS a limited form of injunctive relief, and

5   ORDERS that, in addition to its earlier Declaratory Relief, and

6   insofar as any production to Plaintiffs remains outstanding in any

7   FOIA request made on or prior to September 9, 2015 (the date of the

8   last filed supplemental brief), all final results of such searches

9   be provided within 30 days of the date of this Order.

10      Yet the Court is still sympathetic to the fact that the

11  Fisheries Service continues to receive ongoing, complex FOIA

12  responses, flooding it with administrative work which interferes

13  with its primary duties -- and now the Fisheries Service will need

14  to take even more of its time to answer the below inquiries of the

15  Court.  Moreover, the Court recognizes it has not provided the

16  Fisheries Service enough time since issuing its Declaratory Relief

17  to reasonably remedy this pattern-and-practice.  The Court believes

18  that the current efforts of the Fisheries Services will assist in

19  this goal.  Accordingly, the Court exercises its discretion to DENY

20  WITHOUT PREJUDICE any further injunctive relief at this time.

21      This grace period is subject to continued, clear, and

22  effective efforts by the Fisheries Service that it is curing its

23  prior legal violations.  How precisely to continue such efforts or

24  organize an agency to best comply with the law is beyond the

25  purview of the Court.  Such fixes and organization must come from

26  the Fisheries Service itself, other agencies that control the

27  Fisheries Service, the Executive, or Congress.  The Court therefore

28  ORDERS the Fisheries Service to SHOW CAUSE how it is curing its

**United States District Court**
For the Northern District of California

prior legal violations to a sufficient degree the Court should continue to withhold injunctive relief.  To meet this showing, the Fisheries Service is ORDERED to submit a document detailing precisely the status of its backlog, how the Fisheries Service intends to (or has been) fixing the problem, the effectiveness of recent changes in eliminating the backlog, how the Fisheries Service will ensure any immediate success will persist beyond the involvement of the Court, and any other information that may be useful for the Court to consider.  This document must be filed with the Court within 30 days of the date of this Order.  Based upon this showing of cause, the Court will craft an appropriate injunction, request a further (comparable) showing of cause, or dismiss this case.

## V.    CONCLUSION

For the reasons set forth above, insofar as they were not already resolved, the cross-motions for summary judgment are GRANTED IN PART and DENIED IN PART.  With the exception of declaratory and injunctive relief, the Court GRANTS summary judgment in favor of the Fisheries Service and DENIES summary judgment to the Plaintiffs.  The Court ORDERS that within 10 days of the date of this Order, the Fisheries Service produce those portions of the 11 page ledger which are not directly privileged or provide an explanation why the ledger is also exempted.  The Court finds OCE III MOOT and it is therefore DISMISSED WITH PREJUDICE. The Court GRANTS declaratory relief and ORDERS all final results of any production to Plaintiffs still outstanding in any FOIA request made on or prior to September 9, 2015 be provided within 30 days of

United States District Court
For the Northern District of California

the date of this Order.  Further injunctive relief is DENIED
WITHOUT PREJUDICE.  In addition, the Court ORDERS the Fisheries
Service to SHOW CAUSE why an injunction should not in the future
issue.  Accordingly, the Fisheries Service is ORDERED to file,
within 30 days of the date of this Order, a document detailing
precisely the status of its backlog, how the Fisheries Service
intends to (or has been) fixing the problem, the effectiveness of
recent changes in eliminating the backlog, how the Fisheries
Service will ensure any immediate success will persist beyond the
involvement of the Court, and any other helpful information.

The Court deems this Order to entirely satisfy all motions and
cross-motions for summary judgment in the two still-pending cases,
and the motions are hereby terminated.  The Court also suspects
that upon resolution of any supplemental action required herein,
the two still-pending cases can be dismissed in their entirety.
Parties are therefore ORDERED to SHOW CAUSE via a single, joint
document filed within 10 days of the date of this Order, detailing
whether there are any further additional matters for the Court's
consideration (excluding responses to matters ordered herein).
This will allow the Court to easily determine whether or when the
remaining cases can be entirely dismissed upon resolution of the
matters ordered herein.


IT IS SO ORDERED.


Dated: October 21, 2015                    _____

                                           UNITED STATES DISTRICT JUDGE