1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7

OUR CHILDREN'S EARTH
FOUNDATION, et al.,

Case No.  14-cv-01130-WHO

8

Plaintiffs,

**ORDER GRANTING IN PART AND
DENYING IN PART MOTION FOR
ATTORNEY'S FEES**

9

v.

10

NATIONAL MARINE FISHERIES
SERVICE, et al.,

Re: Dkt. No. 82

11

12

Defendants.

13

Plaintiffs seek an award of $723,202.74 in attorney's fees and $3,190.39 in costs for

14

succeeding in part on their consolidated lawsuits filed under the Freedom of Information Act

15

(FOIA) against the federal agency defendants.  Dkt. 94.  I conclude that plaintiffs are eligible and

16

entitled to an award of attorney's fees, but at a significantly reduced amount in light of requested

17

hourly rates that are not adequately supported and unnecessary or excessive time billed.

18

**BACKGROUND**

19

Plaintiffs Our Children's Earth Foundation and Ecological Rights Foundation are Bay Area

20

non-profits dedicated to protecting the environment.[1]  Plaintiffs sent a series of nine FOIA

21

requests to National Marine Fisheries Service (NMFS) starting in May 2013.  The requests

22

concerned NMFS's oversight of activities by Stanford University and the impact of those activities

23

on the Central California Coast steelhead.  Plaintiffs were concerned with Stanford University's

24

operation of Searsville Lake and Dam, which were built in 1892, and other related water

25

diversions and infrastructure that Stanford uses to provide non-potable water for its campus.

26

Plaintiffs believe that "Lake Water System" adversely affects the steelhead by reducing water

27

28

[1] *See* Declaration of Annaliese Beaman (Dkt. No. 83) ¶ 2.  Plaintiffs are referred to collectively as
OCE.

United States District Court
Northern District of California

flows in San Francisquito Creek and its tributaries and cutting the steelhead off from access to upstream spawning habitat. *See* Judge Conti's March 30, 2015 Order [Dkt. No. 59] at 3-4. Plaintiffs attempted to enjoin Stanford's activities in a separate lawsuit, *Our Children's Earth Foundation v. Stanford Univ.*, No. 13-cv-00402-JSW (N.D. Cal.).[2]

In response to what OCE contends were deficient responses to its first four FOIA requests, plaintiffs filed their first lawsuit (*OCE I*) in April 2014. In that lawsuit, OCE challenged whether NMFS's responses to plaintiffs' FOIA requests were adequate, whether NMFS had a pattern and practice of tardy and incomplete responses, and whether FWS failed to meet its internal deadline to respond to NMFS.[3] Plaintiffs filed their second lawsuit (*OCE II*) in September 2014, based on the tardy or otherwise deficient responses to their second set of FOIA Requests (FOIA requests 5 - 8). In *OCE II* plaintiffs alleged that NMFS failed to adequately respond to their additional FOIA requests, and reiterated their argument that NMFS had a pattern and practice of tardy and incomplete responses to FOIA requests.[4] The lawsuits were related by Judge Conti.[5]

In *OCE I*, the parties moved for summary judgment. Plaintiffs argued that: (1) NMFS failed to adequately describe its searches or conducted an inadequate search and withheld documents without sufficient justification; (ii) they were entitled to a declaratory judgment that NMFS violated FOIA's deadlines in responding to their four requests and in three related internal appeals, and FWS violated FOIA's deadlines in responding to a referral of documents from NMFS; and (iii) the alleged violations of the FOIA are a part of a pattern and practice of non-

---

[2] The government contends that plaintiffs' first FOIA request was filed "as discovery" for the Stanford lawsuit. Oppo. 6.

[3] A second defendant in *OCE I*, Fisheries and Wildlife Service (FWS) was alleged to have failed to respond to NMFS's request that FWS review and release under the FOIA portions of FWS's documents that NMFS had it its possession.

[4] The Army Corps of Engineers (Corps) was also named as a defendant in *OCE II*, as having failed to appropriately respond to plaintiffs' FOIA requests.

[5] Plaintiffs filed a third lawsuit (*OCE III*) in June 2015, which was also related to 14-1130. In *OCE III*, plaintiffs asserted that NMFS had failed to provide a timely final decision in response to OCE's ninth FOIA request (from April 2015) regarding more "up-to-date information" on the same subject matter. Judge Conti, on plaintiffs' request and without opposition from NMFS, dismissed *OCE III* as "prudentially moot." October 2015 SJ Order at 17-18. Plaintiffs are not seeking fees or costs related to that lawsuit. Mot. 4, n.1.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  compliance with the FOIA's mandates, so the Court should enjoin NMFS and order it to comply

2  with its FOIA obligations.  March 30, 2015 Order at 6-7.  The government opposed those

3  arguments.

4        In an Order dated March 30, 2015 [Dkt. No. 59, Case No. 14-1130], Judge Conti:  (i) ruled

5  that NMFS failed to conduct adequate searches in response to OCE's first and third FOIA

6  requests;[6] (ii)  held in abeyance the determination as to whether NMFS adequately invoked FOIA

7  Exemption (b)(6) to withhold names and contact information from responsive documents pending

8  further supplementation of the factual record by NMFS (concerning the privacy concerns that

9  would be implicated by release of that information); (iii) affirmed in part the withholding of some

10  attorney-client documents, but concluded that NMFS had not met its burden to explain why

11  certain portions of documents did not contain segregable and releasable information or why one

12  specific document was withheld as attorney-client privileged and, therefore, held in abeyance the

13  determination as to NMFS's withholding of those documents was appropriate; and (iv)  granted

14  plaintiffs' request for a declaratory judgment that NMFS failed to comply with the statutorily

15  mandated response and appeal deadlines with respect to the four FOIA requests at issue.  *Id*. at 8-

16  26.[7]  Judge Conti denied plaintiffs' motion and granted defendants' motion regarding

17  withholdings, redactions, and timeliness.  *Id*. at 28.[8]

18        NMFS then provided additional information to the Court concerning its withholdings and

19  redactions, and plaintiffs submitted responses regarding the same.[9]  In an Order dated July 20,

20

21  [6] Judge Conti granted plaintiffs' motion on the adequacy of the search as to the first and third FOIA requests, and granted defendants' motion as to the adequacy of the searches in response to

22  the second and fourth requests.  *Id*. at 12.

23  [7] Judge Conti, however, expressly did not reach the question of whether plaintiffs had proven that NMFS had a pattern and practice of untimely responses, because "[t]he pattern and practice and

24  cutoff date allegations are repeated, with a fuller evidentiary record, in cross-motions for summary judgment pending in" *OCE II*, and the Judge intended to address them in a subsequent

25  order.  *Id*. at 22.

26  [8] Plaintiffs point out that in preparing its cross-motion for summary judgment in *OCE I*, NMFS uncovered two additional responsive documents and disclosed them in full.  *See* Declaration of

27  Gary Stern [Dkt. No. 41, 14-1130] ¶ 17.

28  [9] As part of its supplemental briefing, NMFS decided to release two previously withheld in full documents and to release three redacted documents that had previously been withheld in full.  It

3

United States District Court
Northern District of California

1    2015, Judge Conti addressed the issues remaining from *OCE I*, as well as the cross-motions filed

2    in *OCE II*.  Judge Conti characterized the remaining arguments made by plaintiffs as: (i) NMFS

3    failed to adequately search for records responsive to two of its requests; (ii) NMFS improperly

4    withheld or overly redacted responsive records under two FOIA exemptions; (iii) NMFS was

5    defying Department of Commerce (of which NMFS is a part) regulations by cutting off their

6    search for responsive records at the date the FOIA request is received rather than the date the

7    search begins; and (iv) the request for a declaratory judgment that NMFS's and the Corps'

8    responses to plaintiffs' requests were untimely, and grant declaratory and injunctive relief to

9    remedy NMFS's alleged pattern and practice of FOIA violations.  July 20, 2015 Order [Dkt. No.

10   70, Case No. 14-1130] at 3-4. NMFS and the Corps cross-moved for summary judgment, arguing

11   that their responses were adequate and declaratory and injunctive relief were unwarranted. *Id*. at

12   4.[10]

13        As to the substance of the adequacy of NMFS's responses, Judge Conti found that: (i)

14   NMFS had failed to provide sufficient information for the court to determine whether NMFS

15   conducted an adequate search, ordered NMFS to supplement the factual record, and held in

16   abeyance the issue of summary judgment on NMFS's search; (ii) NMFS had properly withheld

17   draft biological opinions under FOIA Exemption (b)(5), but did not adequately justify its

18   withholding or non-redaction of an email under (b)(5), and as such NMFS was required to

19   supplement the factual record to justify its withholding and non-redaction, and the court held in

20   abeyance summary judgment on the withholding of that document; and (iii) granted summary

21   judgment to NMFS withholding under FOIA Exemption (b)(7) of names in a report.  *Id*. 5-17.

22        As to the issue of untimely responses and pattern and practice of delay and improper cutoff

23   dates, Judge Conti: (i) granted plaintiffs' request for declaratory relief that NMFS violated its

24   statutory duties with respect to the timeliness of its responses and appeals, but declined to enter

25    

26   also stated it was conducting a supplemental search for documents responsive to OCE's first and
     third FOIA requests.  Dkt. No. 60 at 4-5; *see also* Dkt. No. 59 at 19, 21.

27   [10] In its cross-motion pleadings in *OCE II*, NMFS decided "upon additional review" to release an
     additional eleven documents in part and one in full.  Dkt. No. 19 (14-4365) ¶ 28; Dkt. No. 18-1

28   (14-4365) ¶ 5.

United States District Court
Northern District of California

declaratory relief against the Corps; (ii) determined that further facts were needed to address plaintiffs' contention that NMFS was using an improper cutoff date when beginning its search for documents and ordered supplemental briefing; and (iii) ordered plaintiffs to submit supplemental briefing on the status of their pending FOIA requests as to the pattern and practice of delay claim. *Id.* at 17-25.  Finally, as to plaintiffs' request for injunctive relief, the Judge ordered NMFS "to comply with FOIA and its deadlines, due to the Court's finding that the Fisheries Service has failed to do so previously and the potential that these offenses might continue. Yet the Court, having so ordered and having GRANTED declaratory relief, DENIES WITHOUT PREJUDICE further injunctive relief at this time," in part because of "the fact that Plaintiffs appear to be repeatedly making large requests in sufficiently rapid succession that the Fisheries Service is unable to complete its response to one request before receiving a second" and recognizing evidence of good faith and efforts on the part of NMFS to comply with its deadlines and significantly improve its future performance.  *Id.* at 26-27.  The Court held in abeyance the motions regarding NMFS's exemption claims, adequacy challenge, cutoff dates, and pattern and practice allegations pending the supplementation of the record.  *Id.* at 29-30.[11]

Following that round of supplementation, in an October 21, 2015 Order, Judge Conti addressed the remaining issues and ruled that: (i) NMFS's declarants had addressed the concerns over the adequacy of the search and granted NMFS summary judgment on that issue; (ii) determined that one record had been appropriately withheld under (b)(5) based on a supplemental *Vaughn* index and granted NMFS summary judgment on its withholdings under (b)(5); (iii) found that NMFS cured its showing of non-segregability of withheld information based on its supplemental *Vaughn* index, except as to one document,[12] and granted NMFS summary judgment on segregability as to all documents except that one; and (iv) granted summary judgment to NMFS

_____

[11] As part of its supplemental briefing, NMFS decided to release a redacted document that had been withheld in full.  Dkt. No. 27 (14-4365) at 2.  NMFS also explained its search cut-off policy (which OCE contends was "new"), requiring that if one or more subject-matter expert are required to search for documents, the date each expert starts his/her search establishes the cut-off date. Dkt. No. 27-4 (14-4365), ¶18(b).

[12] The Court ordered NMFS to produce the document at issue, or explain further why it should be withheld.  October 21 2015 Order at 15.  NMFS decided to produce the document.

United States District Court
Northern District of California

1   based on additional information as to the cutoff dates used for searches.  October 21, 2015 Order

2   [Dkt. No 72, 14-1130] at 4-17.

3       As to the pattern and practice of delay claim, Judge Conti reviewed the evidence and found

4   that NMFS was curing its processing and response problems and backlog, and therefore denied

5   injunctive relief.  However, in light of the "unmistakable history" of untimeliness and delay, Judge

6   Conti granted declaratory relief to plaintiffs, concluding that: "(1) that the Fisheries Service has

7   previously been engaged in a pattern-and-practice of failure to meet FOIA deadlines; (2) that the

8   Fisheries Service has previously provided responses that were frequently and unreasonably

9   delayed; (3) that due to these delays the Fisheries Service effectively provided no ability to FOIA

10  requestors to anticipate when data might be provided; and (4) that due to these delays information

11  was often provided after a long enough period of time that the data could be out-of-date,

12  effectively negating its value and effectuating a complete denial of information."  *Id*. at 20-21.  He

13  also granted "limited" injunctive relief to plaintiffs, requiring NMFS to provide any outstanding

14  production in response to certain of plaintiffs' requests within 30 days.  *Id*. at 21.  Any further

15  injunctive relief was denied without prejudice, but he required NMFS to show cause as to how it

16  was curing its prior violations and intended to continue its response-time improvements going

17  forward.  *Id*. at 22.

18      After the case was reassigned to me in November 2015, I addressed whether any issues

19  remained to be decided following Judge Conti's October and November 2015 Orders as well as

20  the supplemental briefing filed by the parties regarding NMFS's efforts to cure its past timeliness

21  violations and ensure those would not occur in the future.  In an order dated January 20, 2016, I

22  determined that Judge Conti had resolved all pending issues, and concluded that the evidence

23  regarding NMFS's substantial reduction of its FOIA-response backlog and the "technical,

24  administrative, and staffing improvements" NMFS had implemented to ensure timely processing

25  of FOIA requests on a forward-going basis meant that continuing injunctive relief was not

26  warranted.  January 20, 2016 Order [Dkt. No. 75].  A stipulated judgment was entered on February

27  16, 2016.  Plaintiffs now seek over $700,000 in attorney's fees for the hours they spent litigating

28  *OCE I* and *OCE II*, as well as costs.  Defendants oppose plaintiffs' entitlement to any fees, and

1   challenge the reasonableness of the amount sought.

2                                      **LEGAL STANDARD**

3           FOIA authorizes courts to "assess against the United States reasonable attorney fees and

4   other litigation costs reasonably incurred in any case under this section in which the complainant

5   has substantially prevailed." 5 U.S.C. § 552(a)(4)(E). This provision "has as its fundamental

6   purpose the facilitation of citizen access to the courts to vindicate the public's statutory rights," as

7   the fees and costs of bringing suit could otherwise "present a virtually insurmountable barrier

8   which [would] ba[r] the average person from forcing governmental compliance with the law."

9   *Exner v. F.B.I.*, 443 F. Supp. 1349, 1352 (S.D. Cal. 1978).

10          A court may grant an award of attorney's fees under 5 U.S.C. § 552(a)(4)(E) where the

11  plaintiff establishes that it is both eligible for and entitled to an award. *See Church of Scientology*

12  *of California v. U.S. Postal Serv.*, 700 F.2d 486, 489 (9th Cir. 1983); *Rosenfeld v. U.S. Dep't of*

13  *Justice*, 903 F. Supp. 2d 859, 865 (N.D. Cal. 2012). To be eligible for an award, the plaintiff must

14  show that "(1) the filing of the action could reasonably have been regarded as *necessary* to obtain

15  the information; and (2) the filing of the action had a *substantial causative* effect on the delivery

16  of the information." *Church of Scientology*, 700 F.2d at 489 (emphasis in original).

17          If the court determines that the plaintiff is eligible for attorney's fees, the court may then,

18  "in the exercise of its discretion, determine that [it] is *entitled* to an award of attorney's fees." *Id.*

19  at 492 (emphasis in original). In making this determination, courts consider "(1) the benefit to the

20  public, if any, deriving from the case; (2) the commercial benefit to the complainant; (3) the nature

21  of the complainant's interest in the records sought; and (4) whether the government's withholding

22  of the records sought had a reasonable basis in law." *Id.*; *accord Long v. U.S. I.R.S.*, 932 F.2d

23  1309, 1313 (9th Cir. 1991). "These four criteria are not exhaustive, however, and the court may

24  take into consideration whatever factors it deems relevant in determining whether an award of

25  attorney's fees is appropriate." *Long*, 932 F.2d at 1313 (internal quotation marks omitted). Once

26  eligibility is established, "[t]he decision to award attorney's fees is left to the sound discretion of

27  the trial court." *Church of Scientology*, 700 F.2d at 492.

28

United States District Court
Northern District of California

# DISCUSSION

## I.   WHETHER PLAINTIFFS SUBSTANTIALLY PREVAILED AND ARE ELIGIBLE FOR ATTORNEY'S FEES

The government does not contest that plaintiffs substantially prevailed in *OCE I*, but argues that plaintiffs were not successful in *OCE II*, and therefore are not eligible for fees for that portion of the litigation.  As noted above, in his July and October 2015 orders, Judge Conti addressed the claims asserted in *OCE II* (as well as issues asserted in *OCE I*).  In the July Order, Judge Conti granted plaintiffs' request for a declaratory judgment that NMFS's responses to plaintiffs' FOIA requests 5-8 were untimely.  July 2015 Order at 20-21.  That by itself constitutes "success," albeit on a discrete issue.  *See Hajro v. United States Citizenship & Immigration Servs*., 900 F. Supp. 2d 1034, 1045 (N.D. Cal. 2012) (prevailing on summary judgment and obtaining injunctive relief on claim that defendant's responses were untimely constitutes substantial success), *reversed on other grounds by* 811 F.3d 1086, 1092 (9th Cir. 2016); *Or. Nat. Desert Ass'n v. Gutierrez*, 442 F. Supp. 2d 1096, 1098 (D. Or. 2006) (determination that agency failed to provide a timely response sufficient to create entitlement to fees), *aff'd in pertinent part, rev'd in part on other grounds by Or. Nat. Desert Ass'n v. Locke*, 572 F.3d 610 (9th Cir. 2009).

After initially finding that NMFS provided insufficient information in its declarations and *Vaughn* index to demonstrate the adequacy of some of its searches and withholdings, when NMFS provided supplemental briefing and declarations Judge Conti concluded that the searches were adequate and the withholdings justified (except as to one document under Exemption (b)(5), which NMFS decided to release).  In addition, after receiving plaintiffs' summary judgment motion and while preparing its cross-motion pleadings in *OCE II*, NMFS decided "upon additional review" to release an additional eleven documents in part and one in full.  Dkt. No. 19 (14-4365) ¶ 28; Dkt. No. 18-1 (14-4365) ¶ 5.  Following the next round of supplemental briefing, NMFS decided to release in part yet another document that had been withheld.  Dkt. No. 27 (14-4365) at 2.  The evidentiary record supports plaintiffs' contention that these documents were produced as a result of *OCE II*.[13]  Plaintiffs, therefore, prevailed, on another discrete portion of their litigation in

---

[13] NMFS argues that its responses to Requests 5 through 8 were not produced as a result of the

1    securing these supplemental productions under a catalyst theory. *See, e.g., Dorsen v. United States*

2    *SEC*, 15 F. Supp. 3d 112, 120 (D.D.C. 2014) (plaintiff prevailed where FOIA suit prompted

3    additional or speedier release of documents); *Judicial Watch, Inc. v. United States DOJ*, 878 F.

4    Supp. 2d 225, 232 (D.D.C. 2012) (catalyst theory satisfied where after a final agency response and

5    commencement of lawsuit, additional documents were produced).

6           More importantly, in light of the "unmistakable history" of "unreasonable" untimeliness

7    and delay, Judge Conti granted plaintiffs' request for a declaratory judgment that NMFS failed to

8    provide them with timely responses and had a past pattern and practice of untimely responses.

9    That judgment, along with the limited injunctive relief (requiring NMFS to respond to plaintiffs'

10   then-pending FOIA requests by a date certain), confers prevailing party status on plaintiffs as well.

11   The government – in an attempt to avoid fees for *OCE II* – argues that plaintiffs did not secure any

12   relief in *OCE II* beyond what they would have been entitled to given the claims asserted in *OCE I*.

13   Oppo. 7-8.  However, Judge Conti specifically held the pattern and practice claim in abeyance in

14   *OCE I* to determine it on the more complete evidentiary record presented in *OCE II*.  *OCE II*,

15   therefore, was a necessary part to the Court's eventual determination.

16          Similarly, the fact that further, more wide-spread injunctive relief was not granted in

17   response to the allegations raised in both *OCE I* and *OCE II* in the October 2015 or January 2016

18   Orders was due to the strong showing NMFS made on the steps the agency had taken and was

19   continuing to take to extinguish its backlog and implement policies and practices to ensure timely

20   responses in the future.  The government spends much time in its brief and declarations attempting

21   to show that the new policies and practices NMFS implemented in order to reduce the backlog

22   discussed by Judge Conti and myself in the October 2015 and January 2016 Orders were not

23   conceived in order to respond to, or spurred on by, plaintiffs' litigation but were underway prior to

24   the filing of *OCE I* and *OCE II*.  *See, e.g.*, Oppo. 9-10.  Plaintiffs counter that argument by citing

25   to notes and other documents produced by NMFS staff showing that efforts to reduce the backlog

27   litigation, and cites testimony showing that NMFS began work processing and responding to these
     requests before the *OCE II* complaint was filed.  *See* Hornof Decl. ¶ 7.  NMFS also argues that the

28   three FOIA requests subject to Judge Conti's limited order of injunctive relief, were also being
     processed and responses "underway" before the October 21, 2015 Order.  *Id*. ¶¶ 10-11.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   were just being formulated in June 2015 and were implemented in part to avoid litigation, like the

2   suits at issue which were the only ones pending at the relevant time.  *See, e.g.*, Reply 3-4.

3          However, in order to determine that plaintiffs are eligible for an award of attorney's fees, I

4   need not resolve this factual dispute.  That plaintiffs secured additional documents from NMFS

5   after *OCE II* was filed and after NMFS took a closer look at its searches and withholdings and,

6   more importantly, secured another declaratory judgment recognizing that the agency failed to

7   provide timely responses, had engaged in a pattern and practice of tardy responses, and secured

8   limited injunctive relief as to then-pending but not sued upon FOIA requests, is success significant

9   enough to establish plaintiffs' eligibility for fees.[14]

10         In sum, plaintiffs were the prevailing parties on significant portions of both *OCE I* and

11  *OCE II* and are eligible for an award of attorney's fees and costs.[15]  The next step is to determine

12  if they are entitled to them.

13  **II.     WHETHER PLAINTIFFS ARE ENTITLED TO ATTORNEY'S FEES**

14         The factors courts consider in determining whether a plaintiff is entitled to attorney's fees

15  include "(1) the benefit to the public, if any, deriving from the case; (2) the commercial benefit to

16  the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether

17  the government's withholding of the records sought had a reasonable basis in law."  *Church of*

---

[14] That said, the evidence on the whole indicates that NMFS took more concrete, specific, and immediate steps following Judge Conti's Orders to extinguish its backlog and commit additional resources to speeding up its response times than the agency might have taken but-for plaintiffs' suits.

[15] Plaintiffs repeatedly imply that they were successful on their improper cut-off date challenges, arguing that their lawsuits were the catalyst for NMFS's new cut-off date policy. Mot. at 8, 10. The improper cut-off date issue was raised but not decided by Judge Conti in his March 30 Order, because the issue was also raised but supported by a fuller factual record in the *OCE II* summary judgment briefing that was pending.  In his July Order, Judge Conti determined that, at most, a factual dispute existed, and again held the issue in abeyance for supplemental responses.  In his October Order, Judge Conti found that plaintiffs had not established that NMFS used improper cut-off dates, and instead granted summary judgment to NMFS on plaintiffs' improper search cut-off date claim as to plaintiffs' *own* FOIA requests.  October Order at 17.  Later in the October Order, Judge Conti recognized that the "NMFS West Coast Region appears to have an updated process in place, using modern software, additional personnel, and policy changes (e.g., how the cut-off date changes where there are multiple SMEs assigned) to speed up its process. See Supp. Malabanan Decl. ¶¶ 15-18." *Id.* at 18.  Judge Conti, however, never reached the issue of whether these lawsuits were the catalyst for NMFS's new, updated, or clarified policy with respect to search cut-off dates.

1    *Scientology*, 700 F.2d at 489.  I will discuss each in turn.

2         **A.    Benefit to the Public**

3         In considering the public benefit factor, courts consider "the degree of dissemination and

4    the likely public impact that might result from disclosure."  *Church of Scientology*, 700 F.2d at

5    493.  The factor generally weighs in favor of an award where the information is broadly

6    disseminated to the public.  *See, e.g., Electronic Frontier Foundation v. Office of Dir. of Nat.*

7    *Intelligence*, No. 07-cv-05278-SI, 2008 WL 2331959, at *3 (N.D. Cal. June 4, 2008) (finding that

8    the public benefit factor was satisfied where the plaintiff "immediately posted the requested

9    information on its website" and "created press releases for public access").  Even where the degree

10   of dissemination is limited, or where the level of public interest in the requested information itself

11   is minimal, the public benefit factor may still favor an award "as long as there is a public benefit

12   from the fact of . . . disclosure."  *O'Neill, Lysaght & Sun v. D.E.A*., 951 F. Supp. 1413, 1423 (C.D.

13   Cal. 1996).

14        Courts in this circuit have found a public benefit favoring an award, despite an absence of

15   broad dissemination or a significant level of public interest in the requested information, where (1)

16   the case "establishe[d] that the government may not withhold certain information pursuant to a

17   particular FOIA exemption," *Church of Scientology*, 700 F.2d at 493; (2) the plaintiffs were

18   environmental nonprofits whose purpose was "to oversee and enforce compliance with the [Clean

19   Air Act]" and the requested information was "being used to inform [the plaintiffs'] ongoing

20   oversight and enforcement efforts," *The Sierra Club v. United States Envtl. Prot. Agency*, 75 F.

21   Supp. 3d 1125, 1143-44 (N.D. Cal. 2014); and (3) the requested documents revealed a "long

22   history of abuse" by a paid DEA informant and "expos[ed] the implications of the government

23   dealing with untrustworthy paid informants."  *O'Neill*, 951 F. Supp. at 1423-24.

24        Plaintiffs argue that – just like the plaintiffs in *Sierra Club* – they "utilized the documents

25   to advance their efforts to promote compliance with environmental laws intended to broadly

26   benefit the public interest environmental protection.  Specifically, they utilized the documents to

27   organize public support for measures designed to persuade Stanford and NMFS to do more to

28   protect a threatened fish species and to develop ESA citizen suits claims aiming to help the

United States District Court
Northern District of California

11

1    survival and recovery of this threatened species."  Beaman Decl. ¶¶ 6-8; Mot. 15.  Plaintiffs also

2    disseminated the information they secured to their members, the press, and the public through

3    messages, website postings, press releases, and interviews.  Beaman Decl. ¶¶ 6-8.

4           As NMFS points out, it is unclear what role in that public outreach (if any) the information

5    actually secured by OCE as a direct result of the filing of these lawsuits or Judge Conti's Orders

6    played.  Beaman's declaration is not specific on that point.  *See, e.g., Cotton v. Heyman*, 63 F.3d

7    1115, 1120 (when evaluating the public benefit prong, the court must "evaluate the specific

8    documents at issue in the case at hand").  NMFS does not argue (or show by declaration) that the

9    information produced to OCE after the inception of the suits or Judge Conti's Orders issued was

10   so ministerial or obscure that it could not have supported plaintiffs' public interest and public

11   disclosure goals.  The Beaman declaration, while not specifically focused on documents produced

12   as a result of this litigation, persuasively explains how the documents OCE received through its

13   FOIA requests and its litigation play a significant role in OCE's mission to inform the public

14   about the activities of Stanford and the Central California Coast steelhead.  Dkt. Nos. 83, 96.

15          In addition, this lawsuit effectively and publicly disclosed NMFS's history of untimely

16   responses and significant backlog – as well as the steps NMFS was undertaking to cure those

17   issues.  That shed important light about the agency's non-compliance with its duty under FOIA, a

18   situation Judge Conti repeatedly referred to as "clear, undisputed, and troubling."  March 30, 2015

19   Order at 24; *see also* July 20, 2015 Order at 19 ("In short, even though the Fisheries Service does

20   not take the FOIA's deadlines seriously, '[t]here can be no doubt that Congress [did]'").  Finally,

21   plaintiffs secured a significant, contested legal ruling from Judge Conti: that FOIA allows both

22   declaratory judgment and injunctive relief as remedies for untimely responses.  NMFS vigorously

23   argued that the only available remedy for a violation under FOIA was an order requiring

24   production of withheld documents; a position that was soundly rejected by Judge Conti.  March

25   30, 2015 Order at 24-26; July 20, 2015 Order at 19-21.

26          On this record, plaintiffs have shown that this litigation – through the information released

27   and the legal principles established – conferred a significant benefit on the public.

28

**B.      Commercial Benefit to the Complainant/Nature of Plaintiffs' Interests**

The second and third factors are "the commercial benefit to the complainant" and "the nature of the complainant's interest in the records sought." *Church of Scientology*, 700 F.2d at 492. Courts regularly consider these factors together. *See, e.g., id*. at 494; *Am. Small Bus. League v. U.S. Small Bus. Admin.*, No. 08-cv-00829-MHP, 2009 WL 1011632, at *3 (N.D. Cal. Apr. 15, 2009); *Electronic Frontier Foundation*, 2008 WL 2331959, at *3.

As a general matter, if a "commercial benefit will inure to the plaintiff from the information," or if the plaintiff "intends to protect a private interest" through the FOIA litigation, then "an award of attorney's fees is not recoverable." *Church of Scientology*, 700 F.2d at 494. On the other hand, where the plaintiff "is indigent or a nonprofit public interest group, an award of attorney's fees furthers the FOIA policy of expanding access to government information." *Id*. The Ninth Circuit has instructed that, pursuant to the second and third factors, a court "should generally award fees if the complainant's interest in the information sought was scholarly or journalistic or public-oriented," but should not do so "if his interest was of a frivolous or purely commercial nature." *Long*, 932 F.2d at 1316.

Plaintiffs argue that their non-profit status combined with the lack of any private commercial interest in the information they secured, strongly favors an award under these factors. *See* Beaman Decl. ¶¶ 1, 6-8. The government counters that contrary to plaintiffs' current assertion that their goal in *OCE I* and *OCE II* was to force NMFS to provide more timely and fulsome responses to their and others' FOIA requests, the real purpose of these lawsuits was to force NMFS to produce documents that plaintiffs could and did use in their suit against Stanford University. Declaration of Robin M. Wall [Dkt. No. 92-1], Ex. L ("Stanford Summary Judgment Papers," noting that some of the FOIA production was used on a motion to compel and on a motion for summary judgment in the Stanford case). That purpose, according to the government, is a private one that does not make plaintiffs entitled to fees. Oppo. 11-13.

The cases relied on by NMFS considered private litigants who used FOIA to secure evidence in support of their private lawsuits. *See Hersh & Hersh v. U.S. Dept. of Health and Human Services*, No. 06-04234-PJH, 2008 U.S. Dist. LEXIS 110977, at *7 (N.D. Cal. July 9,

2008) (denying an award of attorney's fees where "plaintiff undertook this FOIA request for decidedly commercial purposes" when plaintiff was litigating private lawsuit against a defendant regarding defective medical devices and plaintiff failed to secure disclosure of the "vast majority" of documents it sought); *Ellis v. United States*, 941 F. Supp. 1068, 1078 (D. Utah 1996) (denying fees where documents sought for assistance in private tort suit, because while documents produced under FOIA created "some slight public benefit in bringing the government into compliance with FOIA and providing information of general interest to the public, the disclosure of the records did not add to the fund of information necessary to make important political choices").[16] They do not address the situation here, where non-profit environmental advocacy organizations bring suit under FOIA as part of their ongoing efforts to shed light on how an agency is (or is not) protecting the environment, albeit with respect to a specific project.

Moreover, while plaintiffs were undoubtedly motivated in some part to secure documents from NMFS in order to assist their litigation against Stanford, there was a significant and separate public benefit sought and secured by plaintiffs – shedding light on the actions of NMFS (as opposed to the actions of Stanford) in carrying out its agency duties and on its handling of plaintiffs' and others' FOIA requests.[17]

These factors weigh in favor of plaintiffs' entitlement to fees.

---

[16] I recognize that the court in *Sierra Club v. United States EPA*, 75 F. Supp. 3d 1125, 1144 (N.D. Cal. 2014) rejected an agency's argument that a non-profit environmental group plaintiff had a commercial interest in the FOIA litigation because they intended to bring environmental litigation, in part because "Plaintiffs were not pursuing a separate private lawsuit against Luminant at the time they initiated the FOIA request."  The court, therefore, did not directly reach the issue raised here.

[17] NMFS's other cases are inapposite, as they do not address whether use of documents secured through FOIA in other litigation equals a "commercial" interest in the FOIA litigation, but stand for the proposition that having a personal interest in the records sought does not increase the access to those records under FOIA.  *See, e.g.*, *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 143 n.10 (1975) ("Sears' rights under the Act are neither increased nor decreased by reason of the fact that it claims an interest in the Advice and Appeals Memoranda greater than that shared by the average member of the public. The Act is fundamentally designed to inform the public about agency action and not to benefit private litigants."); *Shannahan v. IRS*, 672 F.3d 1142, 1151 (9th Cir. 2012) (requestors' interest in IRS documents about themselves to use in their civil tax suit does not negate applicability of FOIA exemptions preventing disclosure).

United States District Court
Northern District of California

C.      **Reasonable Basis in Law**

The fourth factor is "whether the government's withholding had a reasonable basis in law";

in other words, whether the government's actions appeared to have "a colorable basis in law" or

instead appeared to be carried out "merely to avoid embarrassment or to frustrate the requester."

*Church of Scientology*, 700 F.2d at 492, 492 n.6; *see also Rosenfeld*, 903 F. Supp. 2d at 870; *Am.*

*Small Bus. League*, 2009 WL 1011632, at *4.  This factor "is not dispositive" and can be

outweighed where the other relevant factors favor an award.  *Rosenfeld*, 903 F. Supp. 2d at 870

(internal quotation marks omitted); *see also O'Neill*, 951 F. Supp. at 1425 (noting that the

reasonable basis in law factor "in particular should not be considered dispositive").  The burden is

on the government to demonstrate that its withholding was reasonable.  *Sierra Club*, 75 F. Supp.

3d at 1145.

Here, Judge Conti repeatedly found in no uncertain terms that NMFS failed to provide

timely responses under FOIA.  *See, e.g.*, March 30, 2015 Order at 24 (with respect to NMFS's

violation of FOIA deadlines "the record is clear, undisputed, and troubling …. In short, even

though the Fisheries Service does not take the FOIA's deadlines seriously, '[t]here can be no

doubt that Congress [did].'"); July 20, 2015 Order at 19 ("The records in both this and the related

case show a clear and undisputed breach of this [FOIA response deadline] requirement."); October

21, 2015 Order at 18-19 ("the Court has received showing [of] an unmistakable history that the

Fisheries Service fails to meet its statutory deadlines under FOIA and causes Plaintiffs (and likely

others similarly situated) to suffer unpredictable, unreasonable delays.").[18]

Judge Conti also found that in litigating this case, NMFS repeatedly failed to explain with

sufficient detail the adequacy of its searches and the reasons for its withholdings – thereby

necessitating additional rounds of briefing by the parties and orders by the court.[19]  As such, I

---

[18] Judge Conti's repeated use of strong adjectives like "troubling" and "unreasonable" separates
this case from those relied on by NMFS where fees were denied because delayed responses were
caused by confusion or "bureaucratic difficulty" in handling requests.  Oppo. at 14.

[19] I recognize that Judge Conti ultimately found that NMFS had conducted adequate searches and
appropriately withheld all documents except one.  But those conclusions were reached only after
multiple rounds of briefing and decision, necessitated by NMFS's initially deficient declarations
and *Vaughn* indexes.

15

1    conclude that neither NMFS's general responses to the FOIA requests nor its litigation position

2    before this Court had a reasonable basis in law.

3         In sum, plaintiffs are entitled to an award of attorney's fees.  The next step is to determine

4    the amount owed.

## III.    REASONABLE AMOUNT OF ATTORNEY'S FEES AND COSTS

6         "[O]nce the court has determined that the plaintiff is both eligible for and entitled to

7    recover fees, the award must be given and the only room for discretion concerns the

8    reasonableness of the amount requested." *Long*, 932 F.2d at 1314.  In making this determination,

9    the court must scrutinize the reasonableness of (i) the hourly rates and (ii) the number of hours

10   claimed.  *Id*. at 1313-14.  "If these two figures are reasonable, then there is a strong presumption

11   that their product, the lodestar figure, represents a reasonable award." *Id*. at 1314 (internal

12   quotation marks omitted).  Nevertheless, a court "may authorize an upward or downward

13   adjustment from the lodestar figure if certain factors relating to the nature and difficulty of the

14   case overcome this strong presumption and indicate that such an adjustment is necessary." *Id*.

### A.    Hourly Rate

16        NMFS argues plaintiffs' hourly rates are excessively high, and that the Court should apply

17   the hourly rates set forth in the *Laffey* matrix plus locality adjustments, which would result in a

18   decrease of 22.9% in the requested lodestar.  Oppo. at 20-22.  As I recognized in

19   *Public.Resource.org v. United States Internal Revenue Serv*., No. 13-CV-02789-WHO, 2015 WL

20   9987018, at *6 (N.D. Cal. Nov. 20, 2015), "[a]bsent some showing that the rates stated in the

21   matrix are in line with those prevailing in this community . . . I agree [that] that the matrix is not

22   persuasive evidence of the reasonableness of its requested rates."  As in *Public.Resource.org*, I

23   will not bind plaintiffs to the *Laffey* matrix, especially as statutory fee awards from this District do

24   not establish that the *Laffey* matrix rates are in line with prevailing rates for statutory fee cases in

25   the Bay Area legal community.  *See, e.g*., *Public.Resource.org* (awarding rates from $205 for

26   paralegals up to $645 for senior/lead counsel); *Sierra Club*, 75 F. Supp. 3d at 1152-53 (approving

27   hourly rates of $350 to $650 in FOIA action); *Rosenfeld*, 904 F. Supp. 2d at 1001, 1004

28   (approving hourly rates of $460, $550, and $700 in FOIA action); *Hajro v. U.S. Citizenship &*

United States District Court
Northern District of California

*Immigration Servs.*, 900 F. Supp. 2d 1034, 1054 (N.D. Cal. 2012) (approving hourly rates of $450 to $625 in FOIA action) *vacated and remanded on other grounds*, 2015 WL 6405473 (9th Cir. Oct. 23, 2015); *see also Hiken v. Dep't of Def.*, 836 F.3d 1037, 1039 (9th Cir. 2016) (reversing district court order awarding fees at matrix rate).

The rates sought by counsel in this case are, generally, higher than the rates approved in other recent FOIA cases in this District. They are also, more importantly, significantly higher than rates that were requested and approved by these *same* counsel in recent cases in this District for environmental litigation. *See, e.g.*, *OCE v. EPA*, 13-cv-02857 (Dkt. Nos. 82, 99) (awarding fees from $435 to $655/hr for work through early 2015); *San Francisco Baykeeper v. West Bay Sanitary Dist.*, No. 09-5676, 2011 WL 6012936 (N.D. Cal. Dec. 1, 2011) (approving $585/hr for Sproul). Plaintiffs argue this upward departure is warranted because in the past they have relied on the *Laffey* matrix with locality adjustments, but recent cases confirm those rates under-compensate them. *See, e.g.,* Declaration of Christopher Sproul [Dkt. No. 88] ¶ 15; Declaration of Patricia Weisselberg [Dkt. No. 86] ¶ 9.

Plaintiffs undertook a "market rate" analysis and seek compensation for that research from *this* case. The analysis was performed primarily by billing attorney Christopher Hudak. Hudak reviewed fee awards in a number of different types of cases from the Northern District, including class action litigation (antitrust, wage and hour, consumer protection, and securities) as well as one anti-SLAPP case and one FOIA case. *See, e.g.*, Declaration of Christopher Hudak [Dkt. No. 84] ¶¶ 11-32. The market rate analysis did not consider more than one FOIA case (despite there being a number of cases on point) nor did it directly consider cases awarding statutory fees for environmental litigation.[20]

Plaintiffs have not demonstrated that the rates they seek here are reasonable for FOIA

---

[20] The OCE attorneys did rely for "data points" on the Declaration of Richard M. Pearl from a state court case, *Citizens Committee To Complete The Refuge, Inc. v. City of Newark*, Case No. RG10530015, (CA Superior Ct. County of Alameda). The Pearl declaration focused on attorney's fees rates through 2014, and did review some statutory fee-shifting awards, as opposed to the class action attorney's fee awards focused on by the plaintiffs here. *See, e.g.,* Weisselberg Decl. ¶¶ 11-16; Sproul Decl., Ex. 32; Hudak Decl. ¶ 34.

United States District Court
Northern District of California

litigation (or environmental fee-shifting litigation).  They seek to downplay the fact that in cases from 2014 and 2015 *these same attorneys* requested significantly lower attorney's fee rates.  I do not believe the case law supports limiting plaintiffs to their prior requested rates, but I do believe that any *significant* upward departure should be justified, for example, by declarations explaining the increases in light of increased expenses from doing business and practicing in certain markets or other factors.  I also do not find plaintiffs' focus – as support for their requested hourly rates in these cases – on large scale, complex class action cases to be persuasive.  That is not to say that FOIA cases cannot be complex.  But the high rates awarded for complex class action cases can be explained in large part by the necessity in those cases for plaintiffs' counsel to incur significant cost outlays (for experts, document review systems, travel, depositions, etc.) as well as attorney time (to review hundreds of thousands of documents, numerous depositions, etc.) which are not typically required in FOIA cases and were not required in these cases.

Accordingly, I find that the hourly rates plaintiffs request here are not adequately supported and are not reasonable.  This conclusion is consistent with *Hiken v. Dep't of Def.*, 836 F.3d 1037, 1044–46 (9th Cir. 2016), where the Ninth Circuit confirmed that a "reasonable rate" is the rate prevailing "in the community" for "similar work" performed by attorneys of comparable skill and experience and based on record evidence of prevailing historical rates.   I do not find that plaintiffs' survey is based on the performance of "similar work" by attorneys of comparable skill and experience.

Plaintiffs shall recalculate their lodestar based on hourly rates that are consistent with the rates they requested in prior FOIA or environmental cases for the same time periods.  For example, time spent on these cases in 2015 should be sought at the same rate previously sought and/or awarded by a court for time spent in 2015.  For time in 2016 – as to which plaintiffs may have not had an hourly rate approved by another court – plaintiffs are entitled to a 10% increase over their 2015 approved-rates, absent specific justification supported by a declaration explaining why a particular attorney or paralegal should be granted a higher percentage increase.[21]

_____

[21] For any biller in these cases who has not had a prior-court-submitted or approved billing rate, plaintiffs shall use a prior-court-approved billing rate for an attorney or paralegal of comparable

United States District Court
Northern District of California

**B.    Hours Expended**

NMFS also argues that the hours sought by plaintiffs cover time and tasks that were neither necessary nor reasonable for the prosecution of these suits and asks me to reduce the requested fee amount for the following:

- A $188,381.47 reduction for plaintiffs' work on the claims they lost;

- A $26,686.22 reduction for work on pleadings and other papers that were never filed;

- A $89,442.20 reduction for work performed at the administrative stage and review of documents produced;

- A reduction for work unrelated to *OCE I* and *OCE II*; and

- A 30 – 50% reduction generally for excessive, redundant, and unnecessary work.[22]

**1.    Claims Lost**

NMFS argues that plaintiffs are not entitled to $188,381.47 in fees (calculated at the hourly rates that NMFS objects to) for "distinct" claims they lost: (i) claims against FWS and the Corps; (ii) claims regarding the adequacy of the searches in *OCE II* (based on a frivolous argument that NMFS's declarant's testimony was "hearsay"); (iii) unsuccessful challenges to NMFS's withholdings; (iv) claims regarding actual and pattern and practice search cut-off dates; and (v) plaintiffs' response to the October 21 2015 Order to Show Cause as to whether further injunctive relief was necessary.[23]

With respect to the $3,506.18 incurred with *OCE III*, plaintiffs admit they do not seek to recover for that time.  So there is no longer a dispute as to that time/amount.  The only other unsuccessful legal theory/claim NMFS "breaks out" time for is the $23,032.40 plaintiffs charge

---

experience.

[22] Plaintiffs explain that before submitting their request, most billers took 10% of the time billed "off the top" to account for any potential inefficiencies or redundancies in their work.  Sproul Decl. ¶¶ 92, 97; Weisselberg Decl. ¶ 41; Isaacs Decl. ¶¶ 6-7; Costa Decl. ¶ 6; Hudak Decl. ¶ 35 (worked over 100 hours, but seeking payment for approximately 30 hours).

[23] NMFS breaks down the $188,381.47 (or more accurately $188,381.48) as follows: $23,032.40 for 37.1 hours spent on the opposition to NMFS's showing in response to Judge Conti's OSC; $161,842.90 as a 50% reduction from the $323,685.79 plaintiffs billed for pleadings, summary judgment, supplemental briefing and the joint submission; and $3,506.18 incurred with *OCE III*.

for 37.1 hours spent responding to NMFS's showing in response to Judge Conti's Order to Show Cause.  Oppo. 17.  However, I find that that time was reasonable and necessary.  Judge Conti's OSC raised significant questions regarding the steps NMFS was taking to address its FOIA backlog, and NMFS filed a detailed response, supported by declarations.  Plaintiffs filed a brief to contest some of the assertions made by NMFS, but that pleading was helpful and relied on by me in determining whether any live issues remained in the litigation, even though I denied plaintiffs' request for further injunctive relief as to the backlog.

NMFS does not break out the time spent on the other "unsuccessful" issues because plaintiffs' billing records do not allow them to.  NMFS instead argues the 595.6 hours/$323,685.79 plaintiffs billed to pleadings for the summary judgment, supplemental briefing, and the joint submission required by the October 2015 Order should be reduced by 50% to account for plaintiffs' other losing claims/theories.  Oppo. 17-18; Wall Decl., Ex. B (Summary Fee Analysis).  I disagree.

As to claims against FWS and the Corps for their alleged part in causing repeated delays in NMFS's FOIA responses, while plaintiffs were not ultimately successful in their claims against those entities, the claims made were part and parcel of the impermissible and excessive delay claims against NMFS.  This time is compensable.

As to claims regarding the adequacy of the searches in *OCE II* (based in part on the argument that NMFS's declarant's testimony was hearsay), while plaintiffs eventually lost this claim, Judge Conti forced NMFS to submit supplemental briefing explaining the adequacy of its searches.  NMFS's initial explanations, therefore, were deficient and plaintiffs' successfully argued that deficiency to Judge Conti in their initial and supplemental briefing.  This time is compensable.

As to the unsuccessful challenges to NMFS's withholdings, plaintiffs eventually lost all but one of these claims.  But in the process of the initial and supplemental rounds of briefing, NMFS agreed to produce more documents and NMFS had to explain its actions in greater detail due to deficiencies in their initial briefing and declarations.  This time is compensable.

And as to the eventually unsuccessful claim regarding NMFS's pattern and practice of

United States District Court
Northern District of California

1  applying improper search cut-off dates, while plaintiffs did not secure an order from Judge Conti

2  finding that NMFS had an illegal pattern or practice, the record supports at least an inference that

3  during this litigation NMFS implemented a new or clarified policy.  Even assuming it was simply

4  a clarified policy, that clarification produced a public benefit for future FOIA requestors.  This

5  time is compensable.

6  ### 2.   Pleadings and Papers Never Filed

7  NMFS argues that plaintiffs should not be compensated for 49.1 hours/$26,686.22 for

8  work on pleadings that were never filed, including draft amended complaints in *OCE I* and *OCE*

9  *II*, a motion for reconsideration, and a motion for relief.  Wall Decl., Ex. G (Unfiled Papers).

10  In reply, Sproul explains: (i) the work done on the unfiled SAC in May 2014 in *OCE I* was

11  used on the motion for summary judgment in *OCE I* and is therefore compensable (Sproul Reply

12  Decl. ¶ 5); (ii) the 3.16 hours billed in February 2015 for a "motion for relief" was in fact work

13  done for the Notice Regarding Submitted Matter and Request For Ruling filed on March 2, 2015

14  (*id*. ¶ 6); (iii) 13.19 hours of work in October 2014 was for a pleading filed in *OCE II*, Dkt. 58 (*id.*

15  ¶ 7); (iv) 1.32 hours of time billed in May 2015, was cut from the request on plaintiffs' Reply (and

16  not currently sought); and (iv) the remaining hours that were spent on the unfiled motion for

17  reconsideration in January 2016 are compensable because that unfiled motion was used as

18  leverage to get NMFS to agree to a form of judgment and produce additional documents.  *Id*. ¶ 8.

19  Weisselberg also, on review, cut 0.56 of time from her entries challenged in Wall's Ex. G, because

20  those entries represented work on what was to become *OCE III*.  Weisselberg. Reply Decl. ¶ 11.

21  Considering the declarations, I find that all of the challenged time except the time spent on

22  the unfiled motion for reconsideration is compensable.  Plaintiffs have adequately identified how

23  the time identified by NMFS was spent or used for pleadings actually filed in this action.

24  However, the time spent on the unfiled motion for reconsideration in January 2016 was created

25  voluntarily by plaintiffs and used for "leverage" but was never necessary or useful for any

26  contested decision made by me.

27  ### 3.   Administrative Efforts

28  NMFS wants a further reduction for 157.7 hours/$89,442.20 that plaintiffs spent drafting

21

FOIA requests, working on the agency administrative appeals, and reviewing the documents produced.  Wall Decl., Ex. I.  Generally, "work performed during the pre-litigation administrative phase of a FOIA request is not recoverable under FOIA."  *Elec. Privacy Info. Ctr. v. United States Dep't of Homeland Sec.*, 811 F. Supp. 2d 216, 237 (D.D.C. 2011); *but see Public.Resource.org*, 2015 WL 9987018, at *8 (allowing recovery for two time entries on letters seeking agency reconsideration "given the clear overlap in subject matter between the letter and this litigation, the letter's explicit contemplation of a lawsuit, and the proximity in time between the letter and the filing of" the complaint).

In their Reply and supporting declarations, plaintiffs cut some of the contested time for work on the FOIA requests and administrative appeals, but kept the time spent on two specific FOIA requests in.  As explained by lead counsel Sproul:

> I and my co-counsel have been mindful that we are not entitled to recover for drafting all our FOIA requests and reviewing all the documents obtained for the purpose of learning the substantive content of those documents for the Plaintiffs' citizen suit litigation against Stanford or larger public advocacy campaign related to Stanford and the San Francisquito Creek watershed.  However, we have concluded that we may recover for time spent drafting FOIA requests specifically intended to garner information for use in this litigation and reviewing documents for such litigation purposes. I and my co-counsel have carefully segregated the time spent drafting FOIA requests reviewing documents such that we are seeking recovery only for the latter time. With respect to drafting FOIA requests, we are seeking to recover for time spent drafting (or appealing responses concerning) only two of the multiple FOIA requests at issue in this proceeding that Plaintiffs specifically used to gather information used as evidence against NMFS in this case: FOIA requests sent on April 3, 2014 and November 24, 2015. (the latter is Exhibit M to the Wall Declaration, (OCE I, Dkt. 92-1). The April 3, 2014 FOIA sought documents concerning the searches done by NMFS and the responses provided by NMFS to Plaintiffs in response to their FOIA requests with the aim of developing evidence that NMFS's searches have not complied with FOIA. Plaintiffs' November 24, 2015 FOIA request sought documents with the specific intent of trying to garner evidence that Plaintiffs' litigation had catalyzed NMFS to respond more promptly to Plaintiffs' FOIA requests. The aim was to develop evidence in support of catalyst theory arguments for purposes of attorney fees recovery in settlement and, if necessary, a fees motion. Plaintiffs' November 24, 2015 FOIA Request sought documents related to NMFS's assertions that it had instituted several FOIA reforms also with the specific intent of trying to garner evidence that Plaintiffs' litigation had catalyzed NMFS to institute these reforms. Again, our aim was to develop evidence in support of catalyst theory arguments for

United States District Court
Northern District of California

> purposes of attorney fees recovery in settlement and, if necessary, a fees motion. As discussed in the Reply Declaration of Patricia Weisselberg, Plaintiffs have in fact used documents obtained in response to their FOIA requests as exhibits supporting the catalyst theory arguments they are advancing in their Fees Motion and plaintiffs agree to reduce some of their time spent on drafting the FOIA requests and the administrative appeals.

Sproul Reply Decl. ¶ 10.

Accordingly, Michael Costa cut 11.91 hours/$6,148.98 for drafting FOIA requests and appeals, except for the work he did on the April 3, 2014 and November 24, 2015 FOIA requests that were aimed at gathering information for this lawsuit.  Costa Reply Decl. ¶ 3.  Jodene Isaacs cut 11.21 hours/$5,599.40 for drafting FOIA requests and appeals.  Isaacs Reply Decl. ¶ 2. Weisselberg cut 8.74 hours spent on FOIA appeals, included in Wall's Ex. I.  Weisselberg Reply Decl. ¶ 13.

The bulk of the remaining time appears to be for document review conducted primarily by Costa and Isaacs.  NMFS argues that document review is simply not compensable.  *See, e.g.*, *Sierra Club v. United States EPA*, 75 F. Supp. 3d 1125, 1149 (N.D. Cal. 2014) ("As Plaintiffs received, at least in part, the relief they sought when the EPA produced the documents, the time they expended reviewing the documents was is properly characterized as post-relief activity, separate from the litigation."); *Citizens for Responsibility & Ethics v. United States DOJ*, 825 F. Supp. 2d 226, 231 (D.D.C. 2011) ("Plaintiff would have had to expend this time had DOJ timely produced the documents without litigation; the cost of reviewing documents produced in response to a FOIA request is simply the price of making such a request.").

Plaintiffs respond that in this case, where the adequacy of NMFS's searches and withholdings were central claims, plaintiffs needed to spend significant amounts of time reviewing the documents to support those claims in litigation.  That might be true – but plaintiffs' withholding claims were almost totally rejected (except for one document) and plaintiffs' inadequate search claims were likewise mostly unsuccessful (except for two narrow wins in *OCE I*).  Plaintiffs also do not cite any case law allowing for recovery of time spent reviewing document productions where that review is necessary for a plaintiff to be able to challenge the adequacy of an agency's search or the propriety of withholdings.

1     Based on the declarations, I find that the Costa time spent on the two identified FOIA

2     requests is compensable, given the overlap in subject matter between requests and this litigation as

3     well as the proximity in time between those requests and the filing of pleadings in this case.  The

4     time spent reviewing the documents produced is not compensable.

5     #### 4.     Work Unrelated to *OCE I* and *OCE II*

6     NMFS argues that plaintiffs should not be compensated for 8.9 hours/$4,461.23 billed by

7     Sproul, Weisselberg, Isaacs, and Costa that it contends is unrelated to *OCE I* and *OCE II*,

8     including litigation with Stanford and entries related to FWS and the Corps. Wall Decl., Ex. H

9     (Unrelated Matters).  In Reply, Weisselberg explains the relevance of her entries listed on Exhibit

10    H to *OCE I* and *OCE II*.  Weisselberg Reply Decl. ¶ 12.  Sproul also addresses the 8.9 hours listed

11    in Exhibit H, and other than two mistakes accounting for 0.35/hours (which were cut in the Reply)

12    adequately explains that those hours billed were necessary for *OCE I* and *OCE II*.  Sproul Reply

13    Decl. ¶ 9; *see also* Costa Reply Decl. ¶ 16.  This time is compensable.

14    NMFS also argues that plaintiffs have (perhaps inadvertently) claimed time for work on

15    *OCE III*, despite their claim that they are not seeking that time.  In its Opposition and supporting

16    declaration, NMFS identified 5.9 hours/$3,506.18 it contends was incurred on *OCE III*.  *See* Wall

17    Decl., Ex. D.  As noted above, this time is not compensable.

18    #### 5.     Reduction for Excessive or Redundant Work

19    NMFS asks the Court to reduce by 30-50% any fee award to account for excessive,

20    cumulative, and inefficient billing.  Oppo. at 24.  NMFS specifically challenges: (i) the 158 hours

21    spent on the opening attorney's fees motion and declarations; (ii) 249 hours on summary judgment

22    and supplemental briefing in *OCE I*; (iii) 263.8 hours on summary judgment and supplemental

23    briefing in *OCE II*; (iv) 157.7 hours on the "administrative phase" including record review; and (v)

24    the fact that five attorneys worked on the case, which NMFS contends is excessive given the

25    nature of these cases and is demonstrated by the 173.7 hours/$107,885.73 billed for telephone

26    calls and email correspondence between counsel for "coordination" purposes.  Wall Decl., Ex. F

27    (Coordination Activities).

28    In their Reply declarations, two of the billing attorneys exercised "more" billing judgment

United States District Court
Northern District of California

24

to cut hours in light of potential redundancy.  *See* Costa Reply Decl. ¶ 4 (cutting 4.05 hours/$2,136.38); Isaacs Reply Decl. ¶ 3 (cutting just over 14 hours/$7,087.91).  No other reductions for excessive or redundant work appear to have been made, other than the 10% "off the top" that each of the billing attorneys took off their time initially.

The time spent on the opening attorney's fees motion and declarations is excessive and unreasonable.  In particular, plaintiffs should not be compensated for the time Hudak spent (unsuccessfully as addressed above) surveying cases in order to determine what billing rates should be used for plaintiffs in this fee motion.  Moreover, the time spent in drafting the fee motion – which itself does not raise any unique issues or issues of first impression – is excessive. Plaintiffs purport to be experienced FOIA and environmental litigators; submission of fee petitions is a regular part of that work.  I recognize that reviewing the time records, exercising billing judgment, and creating supporting declarations will take significant time in each case no matter how experienced counsel is.  But the time spent on the *brief* appears to be excessive in and of itself.  A 25% reduction in the time spent on the opening attorney's fees motion is appropriate, as is elimination of the time Hudak spent on his inapposite attorney's fees survey.

As to time spent on the Reply brief and declarations (which NMFS did not have the opportunity to attack), I conclude that the time spent on the brief itself it reasonable, but not the time spent reviewing the time slips and submitting supplemental declarations, because much of *that* time was spent accounting for errors pointed out by NMFS and then making additional reductions for improper or otherwise redundant billing.  Only 50% of the time spent on the declarations in support of the Reply is compensable.

As to the 249 hours spent on summary judgment and supplemental briefing in *OCE I* as well as the 263.8 hours spent on summary judgment and supplemental briefing in *OCE II*, I find that the time is reasonable and compensable.  The summary judgment briefing was extensive, detailed and addressed a number of issues where there was little precedent.  In these circumstances I cannot say the time spent was unreasonable.

As to the 157.7 hours on the "administrative phase" including record review, as noted above, plaintiffs have voluntarily cut all time on drafting the FOIA requests, except for time Costa

United States District Court
Northern District of California

United States District Court
Northern District of California

1  spent on two, and I have already found that time spent reviewing the documents produced is not

2  compensable.

3  Finally, as to the time spent on coordination between counsel, I find that 173.7 hours is

4  excessive.  While this case was complex in the sense that there were a large number of FOIA

5  requests at issue, at least three lawsuits filed, and multiple rounds of summary judgment and

6  additional briefing required, the sheer number of attorneys involved – many of whom it appears

7  were involved in part because of the Stanford litigation – meant that there was an excessive

8  amount of "coordination."  A 25% reduction in the amount of time spent on coordination is

9  appropriate.

10  **C.      Costs**

11  Plaintiffs seek $3,190.39 in costs.  Dkt. No. 94.  NMFS does not oppose the amount of

12  costs, but argues instead that in light of the limited nature of plaintiffs' success and the agency's

13  good faith, costs are not warranted.  Oppo. at 24-25.  Having concluded that plaintiffs are

14  substantially prevailing and that the agency's defenses were without a reasonable basis in law, an

15  award of costs is appropriate.  Plaintiffs are awarded $3,190.39 in costs.

16  **CONCLUSION**

17  For the foregoing reasons, plaintiffs will be awarded attorney's fees, but at a significantly

18  reduced amount, and are awarded $3,190.39 in costs.

19  Within twenty days of the date of this Order, plaintiffs shall, after meeting and conferring

20  with defense counsel, submit a *joint* supplemental brief and proposed judgment containing a

21  revised request for attorney's fees that excludes all of the time I have identified above as not being

22  compensable.  The parties shall make all reasonable efforts to reach agreement on the time to be

23  included in light of the time that has been excluded by this Order.  If the parties cannot agree, any

24  remaining disputes shall be explained in no more than two pages.

25  Plaintiffs must also recalculate their lodestar, using hourly rates that were approved for

26  them in past years and using a rate for 2016 that is no more than 10% above their 2015 rates,

27  unless otherwise justified.  At the time the joint supplemental brief and proposed judgment is filed,

28  plaintiffs shall submit a declaration explaining and identifying: (i) the rates for each biller for each

26

year billed; (ii) the case(s) for which each biller's rates have been requested and approved; (iii) the basis for the 2016 hourly rates sought; and (iv) the basis for any hourly rate sought for a biller who has not had her or his time approved by a prior court order.

**IT IS SO ORDERED.**

Dated: March 1, 2017

William H. Orrick
United States District Judge